Robert M. Guthrie filed an action against Palomar Insurance Corporation and Brenda Reese, alleging negligent failure to provide insurance coverage on a vehicle of Mr. Guthrie's. The jury awarded Mr. Guthrie $40,000, and the trial court entered judgment on the verdict. Contending that Mr. Guthrie was required to prove Palomar's duty to obtain coverage by expert testimony and that Mr. Guthrie did not so prove that duty, Palomar and Ms. Reese made a motion for a judgment notwithstanding the verdict, which the trial court denied.
In 1985, Mr. Guthrie purchased a tractor-trailer, which he leased to Blue Star Ready Mix ("Blue Star") in Russellville. Blue Star is a business owned and operated by members of Mr. Guthrie's family, including his father J. Frank Guthrie and his brother Frank L. Guthrie. Blue Star owned several tractor-trailers, cement mixers, and other items of "heavy" equipment, which were insured through Palomar. During 1985 and 1986, Mr. Guthrie's tractor-trailer was insured through Palomar as part of Blue Star's fleet, and Blue Star paid for the insurance by deducting the cost of the premium from the revenues generated by the tractor-trailer.
In 1986, Mr. Guthrie married and moved to Montgomery. He started a construction company, which obtained its general liability and workmen's compensation insurance through Palomar. Brenda Reese was Mr. Guthrie's "customer sales representative" for Palomar, and she was who Mr. Guthrie talked to, obtained premium information from, and otherwise conducted his Palomar insurance transactions with.
In 1987, Mr. Guthrie and his brother, Frank L. Guthrie, discussed having the tractor-trailer insured under a policy other than Blue Star's fleet policy. Mr. Guthrie contacted Ms. Reese, who gave him a premium rate for insuring the tractor-trailer individually. That premium rate was much higher than the premium rate for the tractor-trailer as part of Blue Star's fleet. After talking to his father, Mr. Guthrie contacted Ms. Reese and told her to put the tractor-trailer on the fleet policy, to bill him for all the premiums, and to send all correspondence concerning the vehicle to him. Ms. Reese placed the tractor-trailer on the fleet policy and billed the insurance to Mr. Guthrie's construction company's insurance account. Still in 1987, Ms. Reese mailed him two premium notices for the tractor-trailer's insurance. She also noted in her file, which was kept at Palomar's office, that she was to bill Mr. Guthrie separately for the tractor-trailer, although the premium was being paid at the Blue Star fleet rate. Ms. Reese mailed notice of that arrangement *Page 1306 
to Blue Star. In the spring of 1987, Mr. Guthrie contacted Ms. Reese and obtained additional insurance on the tractor-trailer. Again, that insurance was billed to Mr. Guthrie's account; Mr. Guthrie's account number was placed on the policy under the phrase "named insured."
In both 1987 and 1988 Mr. Guthrie received premium renewal notices for his workmen's compensation and general liability insurance. In the previous years he had also automatically received the renewal notices and bills on vehicles he had insured with Palomar, including the tractor-trailer. He had not received a renewal notice for the tractor-trailer when he was informed on May 29, 1988, that it had been stolen. When Mr. Guthrie telephoned Ms. Reese to file a claim for the theft of the tractor-trailer, she notified him that the policy had lapsed in April 1988. When Mr. Guthrie asked Ms. Reese why he had not been notified that he needed to renew the policy, she said that she did not know why.
At trial, Mr. Guthrie had the deposition of Susan Gardner, the manager of Palomar's commercial insurance department, read into the record. She testified that Ms. Reese's job as a customer sales representative was to service and market accounts. She further testified that most of Palomar's commercial insurance policies provided coverage for one year; that on accounts where there was under $10,000 in premiums "we will automatically renew the coverages, send a letter to the insured and say this is expiring coverage" before the coverage expires (on accounts with $10,000 or more in premiums Palomar sends a person to contact the insured); that the reason Palomar sends the letter is to make sure that the customer "has proper coverages on the equipment . . . to keep the business." Brenda Reese also testified that she commonly notifies customers of the day of expiration in order to inform them of what insurance they have and to attempt to keep their business. The record indicates that Mr. Guthrie's premium for the tractor-trailer was less than $10,000.
Mr. Guthrie claimed that Palomar and Ms. Reese negligently failed to provide coverage on the tractor-trailer. Mr. Guthrie must prove four elements to prove negligence: (1) a duty to a foreseeable plaintiff, (2) a breach of that duty, (3) proximate cause, and (4) injury/damage. Rutley v. Country Skillet PoultryCo., 549 So.2d 82, 85 (Ala. 1989). The issue before us, as raised in Palomar and Ms. Reese's motion for a judgment notwithstanding the verdict, is whether, in the absence of expert testimony to establish Palomar and Ms. Reese's duty to Mr. Guthrie, the trial court erred by submitting the case to the jury.
Citing Atwater Creamery v. Western National Mutual InsuranceCo., 366 N.W.2d 271 (Minn.1985), Palomar and Ms. Reese argue that expert testimony was necessary to establish their duty to Mr. Guthrie. Mr. Guthrie argues that expert testimony is not necessary because, he says, the defendants voluntarily assumed a duty and the duty they assumed is understandable by laymen within their ordinary knowledge and experience. Palomar and Ms. Reese do not contend that expert testimony is required to proveassumption of a duty; instead, they argue that the evidence does not support a finding of a voluntary assumption of the alleged duty.
No doubt, as Mr. Guthrie argues, although a person may not owe a duty to another, a duty can arise when that person volunteers to act on behalf of another. Berkel Co.Contractors, Inc. v. Providence Hospital, 454 So.2d 496, 503
(Ala. 1983); Rudolph v. First Southern Federal Savings LoanAssociation, 414 So.2d 64, 67 (Ala. 1982); Dailey v. City ofBirmingham, 378 So.2d 728, 729 (Ala. 1979). This principle of law applies to insurance agents and insurance companies. See, e.g., Barnes v. Liberty Mutual Insurance Co., 472 So.2d 1041,1042 (Ala. 1985); United States Fidelity Guar. Co. v. Jones,356 So.2d 596, 597-98 (Ala. 1978); Waldon v. Commercial Bank,50 Ala. App. 567, 281 So.2d 279 (1973).
Furthermore, expert testimony is not necessary, indeed should not be admitted, " 'unless it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, to draw *Page 1307 
correct conclusions from the facts.' " Wal-Mart Stores, Inc. v.White, 476 So.2d 614, 617 (Ala. 1985), quoting C. Gamble,McElroy's Alabama Evidence § 127.01(5) (3d ed 1977); Hagler v.Gilliland, 292 Ala. 262, 292 So.2d 647 (1974).
Reviewing the evidence stated earlier in this opinion, we conclude that the jury could properly find that Palomar and Ms. Reese assumed a duty to notify Mr. Guthrie of the time for renewal and the time of the lapse of his insurance policy for the tractor-trailer. Ms. Reese handled all of Mr. Guthrie's commercial insurance for three years. The defendants provided Mr. Guthrie insurance policies for Mr. Guthrie's business and the tractor-trailer. Ms. Reese sent Mr. Guthrie policy renewal notices on his insurance policies from 1986 to 1988, except, however, she failed to send him the renewal notice for the 1988 coverage on the tractor-trailer. Neither Ms. Reese nor Palomar instructed Mr. Guthrie that they intended to treat the policy on the tractor-trailer differently than they did the other policies of insurance. Furthermore, Susan Gardner's testimony indicated that in the case of customers such as Mr. Guthrie, who had policies on which the premiums totalled less than $10,000, "we will automatically renew the coverage, send a letter to the insured and say this is expiring coverage."
Palomar and Ms. Reese did not show that it is "clear that the jurors themselves . . . from want of experience or knowledge,"Wal-Mart Stores, Inc. v. White, 476 So.2d at 617, could not correctly deduce from the facts in this case that Palomar and Ms. Reese had a duty to notify Mr. Guthrie of the time for the renewal and the time of the lapse of his insurance policy. Id.
Thus, under the facts in this case, expert testimony was not required to establish Palomar and Ms. Reese's duty. Id. See also Clary Insurance Agency v. Doyle, 620 P.2d 194, 200 (Alaska 1980) (where there is "abundant evidence" expert testimony is not necessary); Todd v. Malafronte, 3 Conn. App. 16,484 A.2d 463, 466 (1984) (testimony by an insurance company's own agent regarding duty of the insurance company to make sure that customer is covered is sufficient evidence to establish a duty); Dimarino v. Wishkin, 195 N.J. Super. 390,479 A.2d 444, 446 (1984) (an insurance agent must comply with certain "minimums," which need not be established by expert testimony).
Mr. Guthrie proved that Palomar and Ms. Reese assumed a duty to him. He did not have to prove the existence of that duty by expert testimony. Accordingly, the trial court did not err by submitting the case to the jury without expert testimony to prove the alleged duty. The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.