**Geraldine HIGGINS, on Behalf of and as Guardian of Dennis HIGGINS, et al., Appellants,**

v.

**Elmer WINTER, et al., Respondents.**

**No. C7-90-2703.**

Court of Appeals of Minnesota.

Aug. 6, 1991.

Review Denied Oct. 7, 1991.

Ronald S. Rosenbaum, Steven J. Kinnunen, Tilton & Rosenbaum, St. Paul, for appellants.

Michael J. Dwyer, Mackall, Crounse & Moore, Minneapolis, for respondents.

Considered and decided by RANDALL, P.J., HUSPENI and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

Appellants claim the trial court improperly directed a verdict on their contract claim and improperly excluded expert testimony on their negligence claim. We affirm.

## FACTS

In March or early April, 1979, appellants Geraldine and Vernon Higgins purchased a 1966 Dodge truck for use on the family farm. They owned two other cars, a 1974 AMC Hornet and a 1972 Dodge, each insured under a policy issued by J.C. Penney Casualty Insurance Co. Geraldine Higgins attempted to purchase insurance for the truck from J.C. Penney, but was advised that the company did not cover farm vehicles.

Appellants consulted with respondent Winter–Prom Agency, which handled the fire and wind insurance for the family farm. Appellants had never before contacted the Winter–Prom Agency to obtain automobile insurance. Appellants were advised by Sidney Prom that he could obtain coverage for the farm vehicle, but that it would also be necessary to switch coverage on one of the family passenger cars to the new carrier. Although appellants were satisfied with their J.C. Penney coverage, they decided to transfer their AMC Hornet to the new carrier in order to obtain insurance for the truck.

Appellants allege that Vernon Higgins instructed Prom to obtain the same coverage on the Hornet as he had under the J.C. Penney policy and that Prom agreed to procure the same coverage. However, Prom denies that appellants ever asked him to duplicate the J.C. Penney coverage or that he undertook to duplicate that coverage. Appellants also claim Vernon Higgins produced the J.C. Penney declaration sheet indicating the various limits of coverage on appellant's vehicles, a fact which Prom also denies. Sidney Prom recorded appellant's request for coverage on the standard Iowa–Kemper insurance application form. It is undisputed that Prom asked whether Vernon Higgins wanted particular kinds and limits of coverages when he completed the application. Appellants concede that Prom asked Vernon Higgins whether he wanted underinsured motorist coverage. The application indicates and appellants do not dispute that Vernon Higgins refused *under* insured motorist coverage but did request *un* insured motorist coverage.

Thereafter, both Prom and Vernon Higgins signed the insurance application which was forwarded to Iowa–Kemper. Iowa–Kemper issued insurance consistent with the application. Underinsured motorist coverage was not requested in the application; none was provided in the resulting policy.

In April, 1982, Dennis Higgins, the appellants' son, was severely injured in a one-car accident while driving the AMC Hornet. When appellants discovered the Iowa–Kemper policy did not provide underinsured motorist coverage, they commenced this action against the Winter–Prom Agency claiming that Vernon Higgins had instructed Prom to duplicate the J.C. Penney policy

which included underinsured motorist coverage. Following appellant's case-in-chief, the trial court directed a verdict in favor of Winter–Prom on its contract action. In the remaining negligence action, the jury returned a verdict in favor of Winter–Prom.

## ISSUES

1. Did the trial court err as a matter of law by directing a verdict in favor of the Winter–Prom Agency on appellants' claim for breach of contract?

2. Did the trial court abuse its discretion by excluding expert testimony as to an insurance agent's standard of care?

3. Did the trial court err by denying appellants' motion for a new trial where an exhibit offered by respondents apparently was excluded from the jury room during deliberations?

## ANALYSIS

### I.

■ For the purpose of a motion for directed verdict, "the trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all inferences which may be reasonably drawn from that evidence." *Midland Nat'l Bank v. Perranoski*, 299 N.W.2d 404, 409 (Minn.1980). The trial court may direct a verdict only when it would clearly be the court's duty to set aside a contrary verdict as manifestly against the evidence or when such a verdict does not comply with applicable law. *Id.*

In this matter, the parties dispute whether appellants requested the Winter–Prom Agency to provide coverage on the AMC Hornet identical to the coverage previously provided by J.C. Penney. The trial court directed a verdict on appellants' contract claim, concluding that the parol evidence rule prohibited consideration of an alleged oral agreement by Prom that the earlier coverage would be duplicated. The trial court found that the insurance application was unambiguous and clearly indicated the terms bargained for by both parties.

The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement.

*Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn.1982).

■ Appellants argue, however, that their contract to *procure* insurance was separate and distinct from the insurance contract itself, and that the trial court erred by not recognizing that separateness and by excluding testimony of appellants' oral agreement with Prom. We find no error. Appellants do not dispute that Vernon Higgins, when asked by Prom, declined to purchase underinsured motorist coverage. Likewise, appellants do not claim that the insurance application inaccurately sets forth the coverage requested by Vernon Higgins. Because the application for insurance memorializes Vernon Higgins' request for coverage, including his rejection of underinsured coverage, the written document accurately establishes the agreement of the parties.

■ In addition, appellants argue that respondents did not object at trial to the admission of parol evidence regarding the parties' alleged oral agreement on coverage and therefore the trial court erred in granting a directed verdict on the contract claim. We cannot agree. Respondents raised the parol evidence objection prior to trial. The trial court took that motion under advisement and ruled in favor of respondents at the close of appellants' case-in-chief. There was no error. *See, e.g., Kozak v. Weis*, 348 N.W.2d 798, 802 (Minn. App.1984) (trial court did not abuse its discretion in directing verdict against plaintiff at the end of his case-in-chief for failure to establish essential element rather than dismissing cause of action).

### II.

■ Appellants next contend the trial court abused its discretion by refusing to allow testimony from appellants' expert witness on the issue of the appropriate standard of care concerning technical matters of insurance practice beyond the nor-

mal understanding of the lay jurors. At trial, appellants sought to establish that the Winter–Prom Agency breached its legal duty to exercise the skill and care a reasonable, prudent insurance agent would have used under similar circumstances.

The law imposes a legal duty on insurance agents to exercise the skill and care which a "reasonably prudent person engaged in the insurance business will use under similar circumstances." *Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 898 (Minn.1982). The Minnesota Supreme Court has considered the necessity of expert testimony in establishing an insurance agent's standard of care. In *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn.1985), the supreme court determined:

> Where the acts or omissions complained of are within the general knowledge and experience of lay persons, expert testimony is not necessary to establish a standard of care, even in cases of alleged medical malpractice. * * * On the other hand, the rule for doctors and attorneys generally is that both the standard of care and the departure from it must be shown through expert testimony, because for a jury to decide negligence otherwise would be purely speculative.

*Id.* at 279 (citations omitted). The *Atwater* court determined that if it would be speculative for the jury to determine the issue of an insurance agent's negligence, expert testimony is necessary to establish the appropriate standard of care. *Id.* However, the *Atwater* court noted:

> Insurance agents are professionals in a field that few lay persons know well. However, it is not a field that is so highly technical that the public cannot understand at least the general nature of an agent's responsibilities.

*Id.*

The Minnesota Supreme Court has recently clarified the insurance agent's duty in *Gabrielson v. Warnemunde*, 443 N.W.2d 540 (Minn.1989). There, the su-preme court determined that an insurance agent's duty is ordinarily limited to that of an agency relationship, to act in good faith and to follow instructions. *Id.* at 543. The supreme court concluded that it is for the court to determine whether the facts and circumstances give rise to a duty of care owed by an insurance agent. *Id.* at 543 n. 1. The supreme court stated:

> Absent an agreement to the contrary, an agent has no duty beyond what he or she has specifically undertaken to perform for the client. * * * Thus, the agent is under no affirmative duty to take other actions on behalf of the client if the typical principal agent relationship exists. * * * However, if 'special circumstances' are present in the agency relationship, the insurance agent may possibly be under a duty to take some sort of affirmative action, rather than just follow instructions of the client.

*Id.* at 543–44 (citations omitted).

In this case, appellants argue the trial court erred by excluding their expert's testimony because Winter–Prom's alleged breach of its duty of care went beyond whether or not it did what it was clearly requested to do. Appellants maintain Winter–Prom's breach of the appropriate standard of care could only have been demonstrated through expert testimony because the jury would have had to speculate as to Sidney Prom's actions as measured against the standards of his profession. We cannot agree. The trial court determined that under the particular circumstances, appellants' expert was in no better position than the jury to evaluate a breach of the standard of care owed by Prom to appellants with regard to the insurance transaction. Here, Winter–Prom's duty was no greater than accomplishing what appellants specifically instructed it to do.[1]

In *Campbell v. Valley State Agency*, 407 N.W.2d 109 (Minn.App.1987), *pet. for rev. denied* (Minn. July 22, 1987), we recognized that an insurance agent may have legal duty beyond that specifically undertaken

---

1. Testimony by Vernon Higgins that he requested Prom to duplicate the J.C. Penney coverage was admitted in the negligence action. In the face of conflicting testimony by Sidney Prom, the issue became one of credibility which the jury resolved in favor of Winter–Prom.

by the agent. This court granted a new trial where the jury instruction failed to consider that the relationship between the agent and the insured may · have established a duty on the part of the agent beyond what was contained in the written agreement. *Id.* at 111. *Cf. Johnson v. Urie,* 405 N.W.2d 887, 890 (Minn.1987) (under "appropriate circumstances" insurance agent may have a duty to advise insured of additional optional coverages); *Osendorf v. American Family Ins. Co.,* 318 N.W.2d 237, 238 (Minn.1982) (where insured relied on agent to provide coverage over ten-year period, affirmative obligation to update insurance was found).

■ From the record before us, we discern no special relationship between the parties which would establish a greater standard of care on the part of Winter–Prom than to discharge duties specifically requested of them. Although appellants had purchased other types of insurance through Winter–Prom for their farm, the instant transaction is the only time appellants dealt with the agency to obtain automobile insurance coverage.

Because we have determined the trial court did not abuse its discretion by excluding appellants' expert testimony, we need not reach the issue of the expert's competency.

### III.

■ Finally, appellants contend they are entitled to a new trial because they were prejudiced by the exclusion of an exhibit from the jury room during deliberations. The exhibit at issue was one of three letters introduced by Winter–Prom to impeach Vernon Higgins' testimony that he was less than an average insurance consumer. Apparently, the letters were introduced to show that Vernon Higgins dealt with insurance companies on a direct basis.[2]

The Minnesota Supreme Court has considered the issue of lost exhibits in *Lee v. Yellow Taxi Cab Co.,* 255 N.W.2d 823 (Minn.1977). There, exhibits consisting of

a plaintiff's hospital records were lost. The supreme court refused to grant a new trial because the plaintiff could not demonstrate how it was prejudiced by the failure of the jury to have the exhibits with them in the jury room. *Id.* at 824.

Here, appellants have not demonstrated that they were in any way prejudiced by the exclusion of an exhibit introduced by respondents. Although appellants maintain the missing letter would have assisted the jury in resolving credibility issues, the exhibit was only one of three letters introduced by respondents. Whatever credibility benefits that could inure to appellants through use of an opponent's exhibits were still available in the remaining two letters which were before the jury.

### DECISION

The trial court properly directed a verdict against appellants in their contract claim and did not err in excluding proffered expert witness testimony regarding the duty of an agent to an insured. Appellants were not prejudiced in the omission from the jury room of a cumulative exhibit introduced by respondents.

Affirmed.

---

**2.** There is no dispute that the letters to the insurance companies were from Vernon Higgins. Vernon Higgins denied that he wrote the letters, but admits that he signed them.