Herbert **BERGMAN**, Appellant,

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION**, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 12, 1999.

Filed Dec. 6, 1999.

---

Edwin P. Smith, Philadelphia, for appellant.

William K. Conkin, Philadelphia, for appellee.

Before KELLY and MONTEMURO *, JJ. and CIRILLO, President Judge Emeritus.

KELLY, J.:

██ ¶ 1 In this appeal we must determine whether expert testimony should be required in cases involving allegations of bad faith in the context of insurance practices. Essentially, Appellant, Herbert Bergman, requests that this Court adopt a *per se* rule requiring expert testimony in all bad faith actions by an insured against an insurer. For the following reasons, we hold that the admission or exclusion of expert testimony in actions on insurance policies for bad faith remains a matter within the sound discretion of the

---

* Retired Justice assigned to the Superior Court.

trial court and will not be disturbed, absent an error of law or abuse of discretion. Accordingly, we affirm the trial court's order and judgment in favor of Appellee, United Services Automobile Association ("USAA") and against Appellant.

¶ 2 The procedural and factual history of this appeal have been properly set forth by the trial court as follows:

## I. *PROCEDURAL HISTORY*

[Appellant], Herbert Bergman, brought this action under 42 Pa.C.S.A. Sec. 8371 in May, 1996, against [Appellee], United Services Automobile Association Group, (USAA), alleging a bad faith claim. The case arose out of the insurance assessment of a vehicular accident involving the [Appellant] and two other individuals that occurred in November 1992.

After a bench trial in September, 1997 and a thorough review of all of the written submissions of the parties on this matter, the [Philadelphia County Court of Common Pleas] entered an Order on December 26, 1997, finding for the [Appellee].

The [Appellant] filed a Motion for Post–Trial Relief on January 5, 1998, requesting this Court to grant a J.N.O.V. or in the alternative, to vacate the judgment and grant a new trial on this matter.

After considering the post-trial motions filed by the [Appellant], reviewing the trial notes of testimony, and after a thorough review of all of the written submissions by the parties, this Court now reaffirms its Order of December 26, 1997 and denies all of [Appellant]'s post-trial motions, thereby finding in favor of the [Appellee].

The [Appellant] then notified this Court on June 4, 1998 that he is appealing to the Pennsylvania Superior Court. [Appellant]'s Notice of Appeal was then placed on the Superior Court docket on June 5, 1998. This Court filed a 1925(b) order on June 16, 1998 according to the Pennsylvania Rules of Appellate Proce-

dure, compelling the [Appellant] to submit a Statement of Matters Complained Of On Appeal. The [Appellant]'s sole response was that, "the court erred in refusing to allow [Appellant]'s insurance expert to testify at trial."

## II. *FACTUAL HISTORY*

Specifically, this case involved the [Appellant], Dr. Herbert Bergman, and his automobile insurer, USAA, and the [Appellant]'s underinsured motorist coverage (UIM). The [Appellant] had a liability policy that stacked UIM benefits of $600,000.00. The [Appellant] was involved in a vehicular accident with two other cars. After the claims of the other two individuals were resolved, the [Appellant]'s attorney filed a UIM claim against USAA.

After the UIM claim was instituted, several demands and counter offers were made on behalf of the [Appellant] and USAA, respectively. On August 6, 1994 the [Appellant] made an initial demand of $300,000.00. Later, the [Appellant] demanded an arbitrator, and soon raised his offer demands to $400,000.00 and $500,000.00, respectively. During the processing of the UIM claim, the [Appellant] failed to forward all information regarding his injuries, medical treatment, or employment losses for claim evaluation.

The [Appellee] then named Michael Greenberg as its attorney and appointed an arbitrator. The [Appellant] was offered and later declined $50,000.00 and $70,000.00, respectively, from USAA. Then, the two parties' attorneys agreed on a third neutral arbitrator, Thomas Rutter. The arbitration panel awarded the [Appellant] $120,000.00. The [Appellant] then entered a claim of bad faith under 42 Pa.C.S.A. Sec. 8371.

(Trial Court Opinion, dated September 4, 1998, at 1–3) (citations to evidence and trial testimony omitted).

¶ 3 Appellant raises one issue for our review:

DID THE [TRIAL] COURT ERR IN PRECLUDING THE TESTIMONY OF APPELLANT'S EXPERT?

(Appellant's Brief at iv).

¶ 4 The standard for reviewing an order denying a motion for a new trial is as follows:

[We are] limited to determining whether the trial court acted capriciously, palpably abused its discretion, or committed an error of law which controlled the outcome [of the case]. A new trial will be awarded only when the verdict is so contrary to the evidence as to "shock one's sense of justice."

*Johnson v. Hyundai Motor America*, 698 A.2d 631, 635 (Pa.Super.1997), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (1998). If the record supports the court's decision to deny a new trial, then the decision must be affirmed. *Id.* Moreover,

[t]he role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Furthermore, the findings of the trial judge in a nonjury case must be given the same weight as a jury verdict and will not be disturbed on appeal absent error of law or abuse of discretion. When this [C]ourt reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and, conversely, all unfavorable inferences rejected.

*Tagliati v. Nationwide Ins. Co.*, 720 A.2d 1051, 1052–53 (Pa.Super.1998), *appeal denied*, —— Pa. ——, 740 A.2d 234 (1999) (quoting *Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994) (citations omitted)).

¶ 5 When determining whether the trial court abused its discretion, we have previously stated:

The test is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Terletsky v. Prudential Property and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 686 (1994), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995) (quoting *American States Insurance Company v. Maryland Casualty Company*, 427 Pa.Super. 170, 628 A.2d 880, 891 (1993) (citation omitted)). Our Supreme Court has explained that the definition of a valid use of discretionary power means that the decision under scrutiny had merit. *Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 625 A.2d 1181 (1993).

In *Paden* [*v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 658 A.2d 341 (1995)], [the Supreme Court] set forth the heavy burden that a party complaining of the exercise of a court's discretion must meet, noting that "an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." [*Id.*] at 412, 658 A.2d at 343.

*Hoy v. Angelone*, 554 Pa. 134, 148, 720 A.2d 745, 752 (1998).

¶ 6 Appellant argues that the trial court abused its discretion in refusing to allow Appellant's expert witness, Dr. George M. Gottheimer, Jr., to testify at trial. Specifically, Appellant contends that the trial judge could not properly determine whether there had been a reasonable basis for the action and inaction of Appellant's insurer, USAA, without a yard stick in the form of his expert's testimony, against which to measure the insurer's conduct. According to Appellant, Dr. Got-

theimer was qualified to provide such a "yard stick" in his proposed testimony about insurance industry practices, whether USAA had a reasonable basis for acting or not acting as it did, and how insurance claims are appropriately managed and evaluated. Appellant maintains that cases such as his require the testimony of an expert witness. Appellant concludes that he is entitled to a new trial because the trial court rejected the testimony of his expert at trial. We disagree.

¶ 7 An expert witness is a witness who possesses knowledge not within ordinary reach or understanding, and who, because of this knowledge, is specially qualified to address a particular subject. *Steele v. Shepperd*, 411 Pa. 481, 192 A.2d 397 (1963). When a witness is offered as an expert, the first question the trial court should ask is whether the subject to be addressed by the witness is "so distinctly related to some science, profession, business or occupation" that it is beyond the understanding of the average layperson. *McDaniel v. Merck, Sharp & Dohme*, 367 Pa.Super. 600, 533 A.2d 436, 440 (1987), *appeal denied*, 520 Pa. 589, 551 A.2d 215 (1998) (quoting *Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408, 415 (1984), *appeal dismissed*, 508 Pa. 643, 500 A.2d 428 (1985)). If the answer to that question is "Yes," the trial court must then ascertain whether the proposed witness has "sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in [the] search for truth." *Id.*

¶ 8 Necessity is fundamental to the admissibility of opinion evidence. *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 A. 125 (1936). If the facts can be fully and accurately described to the fact-finder, who, without special knowledge or training, is able to estimate the bearing of those facts on the issues in the case, then the opinions of witnesses are inadmissible because they are unnecessary in the search for truth. *Whyte v. Robinson*, 421 Pa.Super. 33, 617 A.2d 380 (1992). The trial court must determine whether the necessity for the testimony exists and whether the witness is qualified to testify. *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991); *Cooper, supra.*

¶ 9 This Court has also emphasized that expert testimony should not invite the fact-finder to abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion. *Commonwealth v. Montavo*, 439 Pa.Super. 216, 653 A.2d 700 (1995), *appeal denied*, 541 Pa. 636, 663 A.2d 689 (1995). The primary purpose of the expert testimony must be to assist the trier of fact in understanding complicated matters, not simply to assist one party or another in winning the case. *Panitz v. Behrend*, 429 Pa.Super. 273, 632 A.2d 562 (1993). Moreover, the trial court certainly has the discretion to exclude evidence, which is merely cumulative of other evidence. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615 (1983).

¶ 10 Whether a witness may be permitted to testify as an expert is a decision that rests within the sound discretion of the trial court. *Flanagan v. Labe*, 547 Pa. 254, 690 A.2d 183 (1997) (citing *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 664 A.2d 525 (1995)); *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836 (Pa.Super.1999). The trial court's decision will not be disturbed on appeal absent an abuse of the court's discretion. *Bennett v. Graham*, 552 Pa. 205, 714 A.2d 393 (1998); *Hein v. Hein*, 717 A.2d 1053 (Pa.Super.1998). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Turney, supra* at 839.

¶ 11 Pennsylvania law provides a statutory remedy for bad faith on the part of an insurer as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the in-

sured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371

Our legislature has not defined the term "bad faith" within this statute, but this Court has recognized that "bad faith" has a particular meaning in the insurance context:

> Insurance. "Bad faith" on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*MGA Ins. Co. v. Bakos*, 699 A.2d 751 (Pa.Super.1997) (quoting *Terletsky, supra* ).

A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation, and a showing by the insured that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Moreover, when evaluating bad faith under section 8371, a trial court may look to (1) other cases construing the statute and the law of bad faith in general, (2) the plain meaning of the terms in the statute, and/or (3) other statutes addressing the same or similar subjects.

*MGA, supra* at 754–55 (citations omitted).

¶ 12 This case presents an issue of first impression for this Court as to whether expert testimony should be required in bad faith actions. Our examination of case law from other jurisdictions reveals a growing trend among the states in favor of holding that expert testimony is not mandated in all bad faith cases. *See generally DeChant v. Monarch Life Ins. Co.*, 200 Wis.2d 559, 547 N.W.2d 592 (1996) (citing *Weiss v. United Fire & Cas. Co.*, 197 Wis.2d 365, 541 N.W.2d 753 (1995)). *See also Palomar Ins. Corp. v. Guthrie*, 583 So.2d 1304 (Ala. 1991) (holding that expert testimony is not necessary, indeed, should not be admitted, unless it is clear that the fact finder, due to lack of knowledge or experience on the subject, is incapable of drawing correct conclusions from the facts); *State Farm Mut. Auto. Ins. Co. v. Penland*, 668 So.2d 200 (Fla.Dist.Ct.App.1995), *review denied,* 677 So.2d 841 (Fla.1996) (emphasizing that expert testimony should be excluded where facts testified to are of a kind that do not require any special knowledge or experience to form a conclusion); *Higgins v. Winter*, 474 N.W.2d 185 (Minn.Ct.App. 1991) (citing *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271 (Minn.1985)) (explaining that insurance is not so highly technical a field that the public cannot understand at least the general nature of an insurer's responsibilities); *Fillinger v. Northwestern Agency, Inc., of Great Falls*, 283 Mont. 71, 938 P.2d 1347 (1997) (stating that expert testimony is not required on issue of standard of care of an insurance agent in negligence action for failure to procure requested coverage); *Industrial Dev. Assoc. v. F.T.P., Inc.*, 248 N.J.Super. 468, 591 A.2d 682 (A.D.1991), *affirmed,* 127 N.J. 94, 602 A.2d 733 (1992) (concluding that expert testimony unnecessary to establish standard of care of insurance broker); *Shamalon Bird Farm, Ltd. v. U.S. Fidelity & Guar. Co.*, 111 N.M. 713, 809 P.2d 627 (1991) (excluding testi-

mony of insured's expert witness was not abuse of discretion where witness' deposition showed his inability to assist the fact finder in understanding complex business interruption claim); *Groce v. Fidelity General Ins. Co.*, 252 Or. 296, 448 P.2d 554 (1968) (explaining that expert testimony not required where jury capable of making distinction between "good" and "bad" faith). These cases also emphasize that, generally, it is within the capability of the fact finder, unaided by expert testimony, to assess whether an insurer acted in bad faith or breached its duty of care. Thus, courts have consistently refused to require expert testimony as a necessary prerequisite to the submission of bad faith claims.

¶ 13 Other courts have held that expert testimony on the issue of bad faith or an insurer's duty of care, though not required, is admissible where the trial court deems it relevant. *See Hall v. Globe Life and Accident Ins. Co.*, 968 P.2d 1263 (Okla.Civ.App. 1998) (allowing expert testimony on adequacy of insurer's investigation of claim). We also recognize, as have other jurisdictions, that there may be bad faith cases in which expert testimony might be helpful. *See Weiss, supra.* For example, in claims involving complex or highly technical insurance issues and concepts, the trial court may, in its discretion, see a need for qualified expert testimony. *See Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967 (Colo.App.1996), *affirmed and remanded,* 955 P.2d 1008 (Colo.1998) (finding no abuse of discretion in allowing expert's testimony insofar as it addressed alleged statutory violations, explained complex issues of claims practices, and related to subject matter jury expressly asked to consider).

▮ ¶ 14 Nevertheless, we hold that expert testimony is not required as a *per se* rule under Pennsylvania law in bad faith actions. In reaching this decision, we are persuaded by the rationale of the United States District Court for the Eastern District of Pennsylvania in *Dattilo v. State Farm Ins. Co.*, 1997 WL 644076 (E.D.Pa. 1997), *affirmed,* 168 F.3d 478 (3 rd Cir. 1998). Like the instant case, *Dattilo* involved a lawsuit by insureds for injuries they sustained in an automobile accident with an underinsured motorist (UIM). The insureds in *Dattilo* proffered "expert" testimony to the effect that their insurance company had acted in bad faith in handling their UIM claim. The trial court in *Dattilo* doubted both the appropriateness and the effectiveness of allowing the insureds' expert to testify because, although the expert "qualified as a person experienced in claims handling and adjusting on behalf of insurers, [*Dattilo* was] not a malpractice case in which the insurer's conduct would be judged by the standards of the insurance industry." *Id.* at 4. The *Dattilo* court reasoned that the [expert] witness' opinion [was] nothing more than subjective speculation unsupported by any scientific or specialized knowledge and rejected it. *Id.* The *Dattilo* court held, "[b]ad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact." *Id.* We agree generally with the *Dattilo* rationale and find it suited to the circumstances of the instant case.

▮ ¶ 15 Here, Appellant's case proceeded to a bench trial. After a thorough review of Dr. Gottheimer's report and qualifications, the trial court made several observations. First, the court noted that Dr. Gottheimer's qualifications to testify as an expert on the issue of bad faith were questionable.[1] Second, the court expressed to Appellant's counsel its concern that, as Dr. Gottheimer's testimony would have to be limited to "the four corners of his report," and as he discussed nowhere in his report "the procedures that [USAA] offers and the time limits they spent," Dr.

---

1. The court explained, "[Dr. Gottheimer's] curriculum vitae indicates, a question as to whether or not he could be considered an expert, for the particular matters that we were concerned [with] in this case." (*Id.*)

Gottheimer "makes the decision [whether USAA acted in bad faith] for the court," usurping its role as trier of fact.[2] (N.T., 9/11/97, at 291.) Finally, the court concluded that Dr. Gottheimer's testimony would not contribute anything that had not already been said either in his report or by other witnesses of record in this case.[3] Accordingly, the trial court rejected Dr. Gottheimer's testimony in this case. We will not gainsay that decision.

¶ 16 Our independent review of the record reveals that substantial portions of the testimony heard in this trial, during which three witnesses offered the bulk of the testimony, were devoted to exploring whether USAA had acted in bad faith in handling Appellant's claim. The three witnesses were David Gonzalez (USAA claims examiner who handled Appellant's case), Leonard Schaeffer, Esq. (Appellant's attorney for the insurance claim), and Michael Greenberg, Esq. (USAA's attorney on the insurance claim). Appellant's counsel took full advantage of his ample opportunity to question the witnesses. In addition, the trial court allowed Appellant's counsel to make extensive and basically uninterrupted arguments on Appellant's

behalf before Mr. Greenberg testified. (*Id.* at 302–27.)[4]

¶ 17 We agree with the trial court that Appellant had sufficient opportunity to present evidence in support of his contention that USAA had acted in bad faith in handling his UIM claim. Further, the trial court's decision to exclude Appellant's expert testimony is supported by the record. *See Tagliati, supra.* This case did not involve highly sophisticated insurance concepts or practices, or call for special knowledge, skill or experience to understand and analyze USAA's conduct. *See Whyte, supra.* Moreover, the expert's report as described in the trial transcript[5] was conclusory and invited abdication of the court's duty as fact finder. *See Montavo, supra.* Also, the facts Appellant wanted to bring in through the expert's testimony, which might have supported the report's conclusions, were presented through the testimony of other witnesses. *See Burch, supra.* Thus, we see no real prejudice to Appellant. *See Turney, supra.* Therefore, we have no reason to disturb the trial court's decision to exclude Appellant's expert testimony in this case.[6]

2. Counsel for Appellant explained to the court that "in the report [Dr. Gottheimer] talks about the things USAA did or did not do, which did or did not have a reasonable basis, and in his testimony he talks about [this] in detail.... He talks about in detail what the appropriate practice in the industry is, and how these things are viewed within the insurance industry." (*Id.* at 291–92.) The court responded, "That's for the court to determine.... After [Dr. Gottheimer] finishes [testifying], there's nothing for the judge to do. [Dr. Gottheimer has] already made the decision." (*Id.* at 292.)

3. Specifically, the court observed:

I think there has been a tremendous amount of information here from all the witnesses that we have. And I believe that the information to be offered by the expert, ... I have some question about his expertise in this specific problem, and especially from reading his report, the *thrust is not in* that direction. And I think he will not add anything to the case.
(*Id.* at 293–94.)

4. In fact, counsel's arguments at that time were so extended that the court observed, "We're getting into an area of virtually closing arguments, really." (*Id.* at 327.)

5. A copy of the expert's report was not part of the certified record on appeal. Therefore, we accept the court's assessment of the report.

6. The trial court also found that Appellant exhibited bad faith in his unreasonable demands during settlement negotiations. The record reveals that Appellant raised his initial demand of $300,000.00 to $400,000.00, and then to $500,000.00, refusing to make **realistic** counteroffers, in response to the settlement offers of $50,000.00 and $75,000.00 from USAA. We note that USAA's offers to settle the claim were reasonable in view of Appellant's ultimate award of $120,000.00 *in* the arbitration proceeding. Although Pennsylvania law has yet to espouse the concept of *comparative bad faith in the context of* settlement negotiations, we agree with the trial court that in raising his demands twice following a reasonable counteroffer, Appellant

¶ 18 Based upon the foregoing, we decline to adopt a *per se* rule requiring expert testimony in bad faith actions. To the contrary, we hold that the admission or exclusion of expert testimony in bad faith cases remains a matter within the sound discretion of the trial court and subject to the rules of review applicable to discretionary decisions. Accordingly, we affirm the order entering judgment in favor of USAA.

¶ 19 Order entering judgment in favor of USAA affirmed.

¶ 20 President Judge Emeritus CIRILLO filed a concurring opinion.

CIRILLO, President Judge Emeritus, concurring:

¶ 1 I join in the reasoning and result reached by the majority. I write separately, however, to address to what extent the majority's holding should apply in future cases and certain relevant issues that the majority has failed to address.

¶ 2 The majority states that the appellant is asking for essentially a *per se* rule requiring expert testimony in insurance bad faith actions, which the majority declines to adopt. However, nowhere in appellant's brief does he state he would like this court to adopt such a rule. The proper question is not on such a high level, but rather the issue here is simply: "Did the trial court err in precluding the testimony of appellant's expert?"

¶ 3 Presently, Bergman, as the insured, appealed the decision of the trial court because the court precluded the testimony of his insurance expert. The majority cites in its decision the case of *McDaniel v. Merck, Sharp & Dohme*, 367 Pa.Super. 600, 533 A.2d 436, 440 (1987),

which held that two main issues in a case such as this are: (1) whether the subject to be addressed by the expert witness is so distinctly related to some science, profession, business or occupation that it is beyond the understanding of the average layperson and, if the answer to the first prong is yes, (2) whether the proposed witness has sufficient skill, knowledge or experience in that field as to make it appear his opinion will probably aid the trier of fact in the search for truth?

¶ 4 In *Dattilo v. State Farm Ins. Co.*, 1997 WL 644076 (E.D.Pa.1997), *affirmed*, 168 F.3d 478 (3 rd Cir.1998), the Third Circuit held that "bad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact." *Id.* at 4. This premise went directly to proving the first prong of the *McDaniel* test. Certainly, there is no scientific or technical knowledge which had to be presented to the factfinder in the present case. As the trial court noted in its Pa.R.A.P.1925 opinion, "[t]he court was right to refuse to admit Gottheimer's testimony, which in this context was no more than 'subjective speculation unsupported by any scientific or specialized knowledge.'" *Id.* So, not only was scientific or specialized testimony not necessary in this bad faith case, but Gottheimer's report and testimony were not even scientific or specialized.

¶ 5 Since the answer to the first question above is "no," we need not address the second question under *McDaniel*.[7] The majority did not address this question either, as it never answered the question of whether plaintiff's expert, Dr. Gottheimer, was qualified as an expert in insurance

failed to demonstrate a good faith effort to settle the claim.

7. As the majority declines to adopt a *per se* rule requiring an expert in this type of case, the majority does not address whether this holding also applies to *insurers* (rather than insureds as the case here) who may want to bring forth an expert in later cases. Should

an insurance company wish to put an expert on the stand to address insurance-related matters in a bad faith case, it, too, would fail to meet prong one of *McDaniel*, which asks whether the issue is of a technical nature beyond the scope of average layperson's knowledge.

claims handling. However, I do think it should be emphasized that the expert, here, Dr. Gottheimer, was an expert in reinsurance matters, which is separate and apart from any expert in insurance claims handling. Even if the answer to prong one were "yes," this expert would not have qualified under prong two. It is clear Bergman selected an inappropriate expert upon whom the factfinder would have relied.

¶ 6 As the majority agreed with the appellee's request for this court to adopt the rationale of *Dattilo*, it is, however, slightly distinguishable from the present case, although both cases relate to whether an expert witness for an insured in a bad faith case is needed. In *Dattilo*, the court decided the expert "qualified" as an expert, but also decided his testimony would only amount to subjective speculation. *Dattilo* at 4. Here, the majority finds that the testimony of Dr. Gottheimer would "not contribute anything that had not already been said either in his report or by other witnesses of record in this case." *See Majority Opinion* at 1108. Basically, the majority holds the report and testimony of Dr. Gottheimer would be cumulative, repetitive, or even unnecessary testimony to assist the factfinder, without ever first deciding if Dr. Gottheimer qualified as an expert, as the court positively decided in *Dattilo*.

¶ 7 Moreover, the court in *Dattilo* made a distinction between the admissibility of experts in bad faith cases versus malpractice cases, where an insurer would be judged by the standards of the insurance industry. *Dattilo* at 4. Therefore, another item should be addressed: whether the majority's opinion should be followed in malpractice cases, where an expert in insurance matters would be helpful and necessary to the factfinder? Even if the expert qualifies as such, as Dr. Gottheimer would not have, a bad faith case is

not a malpractice case. Here, an insurer's conduct would not be judged by the standards of the insurance industry, as it would in a malpractice case. Since this bad faith case was not a case requiring a comparison of the United Services Automobile Association's claims adjuster against that of the entire insurance industry, it is even more understandable why an expert would be precluded from testifying.[8] Experts in the insurance claims handling industry belong in malpractice cases, not in cases alleging bad faith.

¶ 8 The final feature of this case which the majority ignores is that this was a bench trial. The majority does not relate the importance of this fact. The trial court noted that bad faith cases are usually bench trials:

One thing that's a little different about these bad faith cases is that in the State Court, generally the courts have agreed that they should be a non-jury case ... The analysis in the Federal Court has been different because of the 7th Amendment. So that when these cases are filed in the Federal Court, they get juries ... So, it [is] a different analysis as to whether or not you need an expert, because you have a jury that may not be familiar with the handling of claims, procedures involved in claims. It has been my experience that in a non-jury case, you [do not] have the same analysis. There really [is not] in my view a need to educate the Court on how claims are handled.

¶ 9 This is an important distinction to be made in this state court case, which is not bound by the United States Constitution's Seventh Amendment. This may be the real reason that the trial court judge precluded the testimony because the judge was the factfinder *and* the interpreter of the law. It appears that in bad faith cases the trial court judge will hold the discretionary call as to whether an expert will be

**8.** Another distinguishing factor is that *Dattilo* was a federal jury case, whereas the instant case was a state non-jury case.

needed to testify on these types of matters. Therefore, the personal knowledge of the trial judge will be the determinative factor in whether the trial judge will admit the expert's testimony. Never will a trial judge need to make a decision as to whether to admit an expert in a bad faith case for the assistance of a jury, which traditionally have not heard these types of cases.

¶ 10 With the addition of the foregoing, I join the majority.