# Daniels v. Hospital of Philadelphia College of Osteopathic Medicine

*Daniel L. Thistle,* for plaintiff.
*Kathleen Kramer,* for defendant.

KLEIN, *J.,* June 14, 2001—

## I. SUMMARY

Plaintiff, Patricia Daniels, filed this lawsuit on behalf of her son, Roderick Sterling, who was born prematurely at the Hospital of Philadelphia College of Osteopathic Medicine. Plaintiff claims that because of

hospital negligence, Roderick suffers from impaired cognitive and psychomotor functions.

Daniels attributes this harm to allegedly negligent observation and monitoring of the baby by hospital staff resulting in significant blood loss. Because of the blood loss, Roderick suffered acute anemia which lasted about a month. Roderick now suffers from deficiency of cognitive skills and he had problems with language development and psychomotor skills. Plaintiff attributes these problems to the acute anemia suffered while in the hospital.

To support this claim plaintiff offered the report of Dr. Adler as her expert witness. Dr. Adler opined that the problems that Roderick suffers from can be attributed to acute anemia. Although there is literature supporting the theory that the kind of deficits from which Roderick suffers can be caused by *long-term* iron deficient anemia, this is a different disease from the *acute* anemia from which Roderick suffered.

This court specifically asked for additional argument and briefing to hone in on the differences between the two types of anemia. After thorough review of the original and supplemental evidence, I granted an order precluding the testimony of Dr. Adler. This is because even after given the chance to supplement his report, Dr. Adler did not present evidence that there was sufficient generally accepted medical authority that *acute* anemia causes these kind of problems. Therefore, the requirements of *Frye*[1] and *Daubert*[2] were not met.

---

1. *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), adopted by the Pennsylvania Supreme Court in *Commonwealth v. Topa,* 471 Pa. 223, 231, 369 A.2d 1277, 1281 (1977).

2. *Daubert v. Merrell Dow Pharmaceuticals Inc.* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Once Dr. Adler's testimony was precluded, there was insufficient evidence to go to a jury, and the case was dismissed on summary judgment. Daniels is now appealing the summary judgment decision.

Daniels claims that the court erred in granting the hospital summary judgment because:

(1) Plaintiff claims that her expert witness causation testimony satisfies the requirements of *Blum v. Merrell Dow Pharmaceuticals Inc.,* 564 Pa. 3, 764 A.2d 1 (2000) and that of *Daubert* and *Frye.* This is untrue. Dr. Adler's theory is that Roderick's acute anemia and absence of other problems could lead to the difficulties claimed. However, this theory is not supported by a significant number of medical professionals. Dr Adler did not offer any evidence that his theory was supported with respect to *acute* anemia. The article that Dr. Adler did rely upon dealt with the defects of *long-term* iron deficient anemia which is not the same as *acute* anemia suffered by the plaintiff, and he presented no other evidence relating to acute anemia. This is not merely an oversight, since the doctor was specifically asked to address the difference between the two types of anemia.

(2) Plaintiff's second claim is that the trial court incorrectly read Dr. Adler's report and the *Blum* case. Although Dr. Adler only uses one article, Daniels asserts that it was representative of the vast medical literature on the subject. This argument is without merit for the reason that even though the article cites 41 sources, these sources talk about the problems related to iron deficient anemia, not the acute disease from which Roderick suffered. The plaintiff presents no lit-

erature or sources that support her theory when the problem is acute anemia following blood loss rather than long-term anemia.

(3) Plaintiff's third claim is that the hospital: (a) failed to reference any body of scientific literature that stated that anemia does not cause cognitive and developmental delays, and (b) that the hospital failed to show that scientific literature relied on by Daniels' expert was not generally accepted by the scientific community. This argument fails because the burden of proof is on the plaintiff, and the defendant has no burden to prove anything.

(4) Plaintiff's fourth claim is that the court made factual determinations that should have been found by a jury. It is true that courts merely act as gatekeepers and should only decide if the mechanism of causation is accepted by the scientific community. However, it is the court's job to decide if an expert witness' opinion has achieved "general acceptance" in the medical community. I did not make any factual findings. I merely reviewed the record and articles presented by plaintiff to find they were devoid of any opinion stating that *acute* anemia causes these kinds of problems, and therefore that Dr. Adler's theory did not exhibit the general acceptance standard that is required by the *"Blum II"* test of scientific causation. Therefore, the testimony did not qualify to come in as expert testimony.

(5) Plaintiff's last issue on appeal is that the court misinterpreted the standards of *Blum* and *Frye*. *Blum* held that the scientific methodology used by plaintiffs was flawed because they did not present any studies that established causation. Since in this case Daniels pre-

sented the article which traced lowered hemoglobin to the developmental delays, Daniels alleges that it is irrelevant that the anemia is caused by iron deficiency or blood loss. Further, Daniel alleges that the court's attempt to distinguish between the two is medically incorrect. This argument fails because although Daniels' expert relied on the article on the iron deficient anemia, he did not establish a connection between the two types of anemia.

The arguments will be discussed in more detail below.

## II. FACTS

Roderick Sterling was born four weeks premature. On July 20, 1992, while in the neonatal intensive care unit at Osteopathic Hospital, a nurse placed an umbilical vein line on him. Upon removal of it, the umbilical site was noted to be oozing blood. Plaintiff alleges negligent observation and monitoring which led to Roderick losing in excess of 25 percent of his blood volume through his umbilical cord in about 15 minutes.

Because of the blood loss, Roderick suffered acute anemia, which lasted about a month. *However, at no time during the first six months of life did he suffer from an iron deficiency.* Roderick now has a defect in cognitive skills, which is evident by his low I.Q. level of about 80. In addition, he had problems with language development and psychomotor skills.

An expert witness presented by Daniels, Dr. Adler, said that it was his opinion that the hemorrhage caused anemia and it in turn caused the harm complained of. Dr. Adler continued, saying that the increased harm and

prematurity is directly related to the development concerns and seizures that effect Roderick.

The defendant questioned whether Dr. Adler's opinion that "anemia and low hemoglobin in infancy has significant and long-term effects on cognitive, psychomotor, and verbal skills," was supported by members of the medical field. Dr. Adler filed a supplemental report in which he cited only one article. That article is "Effects of Iron Deficient Anemia on Cognitive Skills in Infancy and Childhood," by Thomas Walter and others. The article discusses the results of studies performed on malnutritioned children, six months of age and older who suffered from chronic iron deficiency for a period of three months or longer. The case studies focus on the effects of long-term, total body iron deficiency on cognitive development not the effects acute anemia would have on long-term cognitive development. Defendant brought a motion for summary judgment arguing that the expert witness did not qualify and the case should be discharged. After extensive briefings and arguments the Honorable Richard B. Klein granted the summary judgment motion. Plaintiff is now appealing that decision.

## III. DISCUSSION

The first argument on appeal is that the summary judgment should not have been granted because the expert's causation testimony satisfies the requirements of *Blum, Daubert,* and *Frye*. Pennsylvania law adopted the *Frye* standard in *Commonwealth of Pennsylvania v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977) and in a recent decision, *Blum v. Merrell Dow Pharmaceuticals Inc.,* 564

Pa. 3, 764 A.2d 1 (2000), the Supreme Court of Pennsylvania has reiterated the *Frye/Topa* standard. The standard reached in *Frye* requires that the admissibility of the evidence depends upon the general acceptance of its validity by those scientists active in the field to which the evidence belongs. *Topa* at 229. The court then relies on such findings in order to determine if the evidence is admissible.

Roderick had acute anemia resulting from blood loss. Daniels' expert failed to provide scientific proof which supports his opinion that cognitive defects may also arise from acute anemia. The expert witness presented only one article which dealt with problems arising from the iron deficient anemia, it did not talk about these problems arising from acute anemia which is what Roderick suffered from as a baby. Even after the court specifically asked for supplemental information on the two types of anemia Dr. Adler still did not present any sufficient evidence supporting the plaintiff's theory that acute anemia causes these kind of problems.

Further, Daniels claims that Dr. Adler's testimony fulfills the requirements of the *Daubert* test. Under *Daubert,* there are two criteria which expert's findings must meet in order to be admissible in court. First, the conclusions should carry scientific validity, or they must have basis in the methods and procedures of science. Second, the evidence must be relevant to the issue in question. *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Although *Daubert* eliminates the idea that scientific community must have reached "general consensus" as to the expert's purported findings, Daniels still

does not fulfill the second criterion of the test. Daniels' expert does not provide relevant testimony as to the acute anemia and its consequences. Instead, the testimony discusses the effects of iron deficient anemia. Thus, Daniels' argument that the causation testimony satisfies the requirements of *Blum, Frye,* and *Daubert* has no merit.

Daniels' second argument on appeal is that the trial court incorrectly read Dr. Adler's report and the *Blum* test. Daniels claims that Dr. Adler's report indicates that anemia and low hemoglobin may lead to cognitive and psychomotor defects later in life. Also because the article cites 41 sources, it is sufficient to exhibit "general acceptance" in the scientific community as required by the *Topa/Frye* standard. However, there are many types of anemia. The type of anemia described by the article is caused by chronic iron deficiency in a diet of malnutritioned children age six months and older over a period of three months or longer. Roderick, in this case, merely suffered from a fifteen minute blood loss and had no iron deficiency in his diet at any time after birth. Therefore, this argument fails because Daniels did not present any medical testimony on whether acute anemia from blood loss such as what was suffered by Roderick leads to any cognitive defects later in life.

Daniels' third argument appeal is that the hospital failed to reference any body of scientific literature to prove that plaintiff's witness testimony was not generally accepted by the medical community. This objection has no merit for the simple reason that plaintiff has the burden to plead and prove her case. The standard for summary judgment is that the nonproving party must

adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to do this establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ertel v. Patriot-News Co.,* 544 Pa 93, 674 A.2d 1038 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d. 401 (1996). To support a medical malpractice claim and get it past summary judgment a plaintiff must present evidence from an expert "who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 892 (1990). When I prohibited the expert witness from testifying, plaintiff had no other expert witness to support her case, thus the case was correctly dismissed at summary judgment.

Plaintiff's fourth claim on appeal is that the court made factual determinations that should have been up to the jury. Whether a witness is permitted to testify as an expert is a decision that rests within the sound discretion of the trial court. *Bergman v. United Services Automobile Association,* 742 A.2d 1101 (Pa. Super. 1999). This court should merely act as a gatekeeper and should only decide if the mechanism of causation is accepted by the scientific community. The jury then will decide how much weight to give the testimony to decide if Roderick's deprivation was sufficient to cause his cognitive and psychomotor skills. Dr. Adler has relied solely on medical literature to support his opinion.

Moreover, the article presents general acceptance of the principle that long-term iron deficiency in the diet of young children may cause cognitive defects. Daniels does not present any expert testimony in support of her purported position that short-term blood loss which may lead to low hemoglobin will produce developmental delays. Thus the plaintiff did not meet the standard necessary to be admitted as an expert opinion. The determination that there is no casual relationship between the alleged harm and Roderick's current condition is not factual but pursuant to the role of the court under the *Frye/Topa* standard.

Plaintiff's last argument is that the court's statement that there are two different types of anemia is medically incorrect. Although Daniels claims, in the appellate brief, that the cause of anemia is irrelevant, Dr. Adler never made clear in his testimony that nutritional anemia is identical to the blood loss anemia, or at least that the consequences of one are indistinguishable from the other. Furthermore, there is a duration of the condition issue here that Daniels never addressed. Dr. Adler has not stated in his testimony that effects on health of anemia resulting from an iron deficiency over a period of three to six months is generally analogized to the acute anemia suffered in this case resulting from a 15 minute blood loss.

Consequently, this position has no merit on the basis discussed.

## IV. CONCLUSION

The motion for summary judgment was correctly granted. The expert testimony of Dr. Adler did not meet

required standards to be admitted. Without an expert witness the plaintiff did not present a prima facie medical malpractice case and it must be dismissed at summary judgment.