Daniel BONENBERGER, Appellee

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 2, 2001.

Filed Jan. 23, 2002.

R. Bruce Morrison, Philadelphia, for appellant.

John L. Elash, Pittsburgh, for appellee.

Before: DEL SOLE, President Judge, LALLY–GREEN and TAMILIA, JJ.

DEL SOLE, President Judge.

¶ 1 This is an appeal from a judgment entered against Appellant, Nationwide Mutual Insurance Company (Nationwide) and in favor of its insured, Appellee, Daniel Bonenberger, based upon a bad faith claim. We affirm.

¶ 2 Bonenberger suffered physical injury in an automobile accident and recovered the limits of the tortfeasor's policy, $15,000. Thereafter Bonenberger sought to collect underinsured motorist benefits (UIM) from his carrier Nationwide. In connection with his claim, Bonenberger sent Nationwide all pertinent medical records, bills, wage loss documentation and a detailed final report of his hand surgeon, Dr. Baratz, along with a settlement demand of $52,968.00. In response Nationwide requested that Bonenberger undergo an independent medical exam, to which he consented. However, an exam was never scheduled and Nationwide made a settlement offer of $7,390.36, which Bonenberger rejected. Months later after Bonenberger supplied Nationwide with his sworn statement and authorization to obtain his worker's compensation files and medical records and after receipt of Dr. Baratz' deposition testimony, Nationwide made an offer of $10,390.36. A final offer of $14,700.00 was later made but rejected before the matter proceeded to a hearing before a board of arbitrators. They entered a unanimous total tort damage award for Bonenberger in the amount of $77,000.00 and a $2,500.00 award for his wife on her loss of consortium claim.

¶ 3 Bonenberger later filed an action against Nationwide claiming it engaged in bad faith in the handling of his UIM claim and in failing to adequately evaluate his injuries at the time of his claim. Following a non-jury trial the court concluded that Nationwide's representatives had no reasonable basis for their valuation of the

claim and were not properly informed on the extent of Bonenberger's injuries. The court noted that Nationwide failed to conduct an independent medical exam and that its representatives were guided by the terms of its Pennsylvania Best Claims Practices Manual which contains the company's overall philosophy. The court characterized this philosophy as "encourag[ing] unethical and unprofessional practices." Finding of Fact 56. In conclusion the trial court ruled that Nationwide had not attempted in good faith to effectuate a prompt, fair and equitable settlement of Bonenberger's claim despite its clear liability under the policy and this compelled Bonenberger to institute litigation to recover the amount due under his policy. Accordingly, Bonenberger was awarded punitive damages in the amount of $275,000.00, attorney fees in the amount of $89,160.00 and $14,736.25 in costs. Following the filing of post-trial motions and the entry of judgment, this appeal was taken.

¶ 4 Nationwide sets forth numerous issues on appeal. It alleges Bonenberger failed to establish by clear and convincing evidence that Nationwide did not have a reasonable basis for its offer and that it knew or recklessly disregarded the absence of a reasonable basis. It further asserts that the verdict was contrary to the weight of the evidence and that the court erred in its findings of fact and conclusions of law. Nationwide also alleges the trial court improperly allowed expert testimony, improperly abdicated its "role of impartial fact finder" and wrongly awarded Bonenberger attorney fees.

■ ¶ 5 As an appellate court we are to review the trial court's final judgment to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. *Bergman v.*

*United Serv. Auto. Ass'n.,* 742 A.2d 1101 (Pa.Super.1999). To succeed in a bad faith claim, the insured must present clear and convincing evidence that "the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *O'Donnell v. Allstate Ins. Co.,* 734 A.2d 901, 906 (Pa.Super.1999), *citing MGA Ins. Co. v. Bakos,* 699 A.2d 751, 754 (Pa.Super.1997). Bad faith in the context of insurance litigation has been defined as "any frivolous or unfounded refusal to pay proceeds of [a] policy." *Adamski v. Allstate Ins. Co.,* 738 A.2d 1033, 1036 (Pa.Super.1999). To constitute bad faith it is not necessary that the refusal to pay be fraudulent. However, mere negligence or bad judgment is not bad faith. *Id.* To support a finding of bad faith the insurer's conduct must be such as to "import[ ] a dishonest purpose." *Id.* It also must be shown that the insurer breached a known duty (*i.e.,* good faith and fair dealing), through some motive of self interest or ill will. *Id.*

■ ¶ 6 Nationwide maintains that the trial court failed to examine the "big picture" in this case, but rather "micro-scrutiniz[ed]" this claim by noting "each and every act or omission by the insurer." Appellant's Brief at 16. From our examination of the record in this matter, the court's findings of facts, and the remarks set forth in the court's opinion which offer an explanation for its ruling, we find the court properly reviewed the evidence as a whole. The court comprehensively reviewed the history of this matter and detailed an exhaustive list of reasons to support its decision. The court specifically did not accept as credible claims made by Nationwide's representatives that they considered multiple factors specific to Bonenberger's physical condition when evaluating his claim and determining what

would be a fair settlement offer. Rather the court found that Nationwide claims handlers "disregarded Plaintiff's medical records, conducted no independent medical examination, and made no reasonable evaluation based on Plaintiff's presentment." Trial Court Opinion, 2/13/01, at 7.

¶ 7 Where trial is held before a judge in a non-jury case the findings of the trial judge must be given the same weight as a jury verdict. *Bergman,* 742 A.2d 1101. It is the trial judge's function to evaluate evidence adduced at trial to reach a determination as to the facts. *Ludmer v. Nernberg,* 433 Pa.Super. 316, 640 A.2d 939 (1994). It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the factfinder. *Id.* The trial judge in this case specifically did not find Nationwide's witnesses credible. After hearing numerous days of testimony the court found that Nationwide's representative did not understand or take steps to learn of Bonenberger's condition and that any testimony "to the contrary is disbelieved." Finding of Fact 34. The court viewed log entries made by these representatives as "merely parroted snippets of medical records without understanding the meaning of Plaintiff's condition." Finding of Fact 35. This credibility determination by the trial judge will not be disturbed. After due consideration of the evidence which the trial court found credible we find ample support for its conclusions.

¶ 8 Nationwide argues the trial court's finding of bad faith was premised upon an erroneous view of the duties an insurer owes to its insured who makes a UIM claim and upon the errant treatment and reliance upon Nationwide's Pennsylvania Best Claims Practice Manual. With respect to the relationship between the parties, Nationwide points to the trial court's statement that a heightened duty of good faith was due Nationwide's insured in a first party claim. The court remarked that the duty of good faith in a first party claim arises out of the contractual nature of the parties' relationship. Nationwide submits that a UIM claim has first party components, in that the insured claimant is often making a direct claim against its own insurer, but these claims are also like third party claims because the parties may each have their own positions on the value of the claim. Nationwide is correct in recognizing this. An individual making a UIM claim is making a first party claim, however the valuation of that claim may follow traditional third party claimant concepts. This said, we perceive of no error in the trial court's analysis. An insurance company does owe its insured a duty of good faith and fair dealing, and whether a UIM is handled much like a third party claim for valuation purposes, the insurer remains committed to engage in good faith with its insured.

¶ 9 We also find the court properly considered the contents of Nationwide's Pennsylvania Best Claims Practice Manual. The court found that the manual was in existence since 1993 and was used by Nationwide's employees as their primary guide in evaluating, valuing and negotiating claims. The court further found that the employees involved in this particular matter utilized the procedures and guidelines of the manual. The court cited portions of the manual which set forth the company's philosophy, which was to reduce the average claim payment to a level first consistent with then lower than major competitors, and to be a "defense -minded" carrier in the minds of the legal community. The court references the manual statements, which called for "aggressive use of IME's," attempts at catching claim-

ants "off guard," and assigning cases to defense counsel who fully follow the adjuster's orders and who refrain from exercising independent judgment. Finding of Fact 56. We agree with the trial court that this philosophy does not encourage reasonable case-by-case evaluation. The manual was relevant evidence and offers support for the court's ultimate finding of bad faith.

¶ 10 Individuals expect that their insurers will treat them fairly and properly evaluate any claim they may make. A claim must be evaluated on its merits alone, by examining the particular situation and the injury for which recovery is sought. An insurance company may not look to its own economic considerations, seek to limit its potential liability, and operate in a fashion designed to "send a message." Rather, it has a duty to compensate its insureds for the fair value of their injuries. Individuals make payments to insurance carriers to be insured in the event coverage is needed. It is the responsibility of insurers to treat their insureds fairly and provide just compensation for covered claims based on the actual damages suffered. Insurers do a terrible disservice to their insureds when they fail to evaluate each individual case in terms of the situation presented and the individual affected. Thus, a company manual, which dictates a certain philosophy in claims handling, may be relevant and useful in evaluating a bad faith claim.

¶ 11 Nationwide next claims that the court erred in allowing the admission of expert testimony on the issue of whether Nationwide had engaged in bad faith. It inaccurately describes a ruling of this court in support of its claim. It states: "Moreover, recent case law clearly holds that expert testimony in this type of case is not necessary and therefore not admissible. *Bergman v. USAA*, 742 A.2d 1101 (Pa.Super.1999)." Appellant's Brief at 42 (emphasis added). Contrary to Nationwide's characterization of the decision, *Bergman* holds that the admission or exclusion of expert testimony in actions on insurance policies based on a claim of bad faith remain a matter within the sound discretion of the trial court. To suggest that *Bergman* holds that expert testimony is not admissible in a bad faith claim is a misstatement of the law.

¶ 12 In *Bergman* this court considered whether "expert testimony should be required in bad faith actions." *Id.* at 1106 (emphasis added.) It noted that there is a growing trend among states in favor of holding that expert testimony is not mandated in all bad faith cases. *Id.* It further noted that other courts have held that expert testimony, although not required, is admissible where the trial court deems it relevant. The court in *Bergman* ultimately ruled that the decision whether to permit a witness to testify as an expert on bad faith is one that rests within the sound discretion of the trial court.

¶ 13 The trial judge who acted as factfinder in this matter permitted the admission of this expert to aid the court in its ability to evaluate the bad faith claim. The trial court, as it noted, was capable of weighing the value of this testimony. We perceive of no abuse of discretion in the admission of this testimony.

¶ 14 In its next issue Nationwide claims that the trial court "demonstrated manifest unreasonableness, bias, partiality, prejudice and/or ill-will to the extent that Nationwide was deprived of its right to have the case heard by and [sic] fair and impartial factfinder." Appellant's Brief at 46. Nationwide asserts that the trial court's treatment of the evidence, rulings on admissibility and persistent questioning led the court to abandon its role of impartial fact finder to become an advocate for

Bonenberger. In response to this claim the trial court wrote, "All parties before [the court] enjoy the same privilege afforded Bonenberger and Nationwide Mutual Insurance Company. The importance of every witness is recognized, and the testimony presented by any witness is considered carefully with genuine interest." Trial Court Opinion, 2/13/01, at 11. Following our review of the record we find no evidence of bias or partiality on the part of the trial court.

¶ 15 In its fifth issue Nationwide alleges the trial court erred in its proposed findings of fact and conclusions of law. It lists numerous statements made by the court and refutes their validity for a variety of reasons. Upon review we find that these claims have each been considered in our disposition of Nationwide's earlier issues and they all have been found meritless.

¶ 16 Nationwide's final claim concerns the award of attorney's fees. The statutory provision governing this matter is found in 42 Pa.C.S.A. § 8371, which provides in relevant part:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:

. . .

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. Nationwide recognizes the applicability of this provision but reads it to encompass only those fees generated in the handling of the underlying UIM claim. It believes attorney fees generated in the prosecution of the statutory bad faith claim are not recoverable under the terms of the statute which provides for

an award in an "action arising under an insurance policy." It is Nationwide's position that the bad faith claim is a separate and distinct claim from the insurance policy contract claim and as such it does not "arise under an insurance policy."

¶ 17 We find Nationwide's reading of the statutory provision contrived. The court in this matter found that Nationwide engaged in bad faith in an action brought by Bonenberger arising under an insurance policy. It is absurd to argue that Bonenberger could recover the costs of pursuing recovery on the UIM claim and be denied recovery of attorney fees in the action which determined that Nationwide engaged in bad faith for its failure to pay those same UIM benefits.

¶ 18 In *Birth Ctr. v. St. Paul Cos.*, 727 A.2d 1144 (Pa.Super.1999), *appeal granted* 560 Pa. 633, 747 A.2d 858 (2000),[1] the court was considering how attorney fees should be calculated. The court found that the calculation of a reasonable fee should begin with the actual number of hours spent in pursuing the claim. In a footnote the court remarked: "The term 'claim' is not limited to the bad faith claim. Fees incurred in pursuing the insured's rights under the policy and/or protecting the insured's interests may also be recovered, including appellate fees, depending on the circumstances of the case, but only if the insured ultimately prevails on the bad faith claim." *Id.* at 1161, n. 11. From this it is apparent that recovery of attorney fees may be had in relation to the fees generated pursuing the bad faith claim. This court in *Birth Center* was advising that fees incurred in pursuing the underlying action based upon the policy are also re-

---

1. Although the Pennsylvania Supreme Court has granted allocatur, the issue of attorney fees was not included as an issue the court will review. *Birth Ctr. v. St. Paul Cos.*, 560 Pa. 633, 747 A.2d 858 (2000).

coverable. Accordingly, we find the award of attorney fees appropriate in this matter.

¶ 19 Judgment affirmed.

¶ 20 LALLY–GREEN, J. concurs in the result.