J-A25026-17

2018 PA Super 82

| | | |
|---|---|---|
| DANIEL BERG, INDIVIDUALLY AND AS THE EXECUTOR OF THE ESTATE OF SHARON BERG A/K/A SHERYL BERG | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 713 MDA 2015 |
| NATIONWIDE MUTUAL INSURANCE COMPANY, INC. | : : : | |
| Appellant | : | |

Appeal from the Judgment Entered April 21, 2015
In the Court of Common Pleas of Berks County Civil Division at No(s):
98-813

BEFORE:   OTT, J., STABILE, J., and STEVENS*, P.J.E.

DISSENTING OPINION BY STEVENS, P.J.E.:          **FILED APRIL 09, 2018**

Our standard of review requires affirming the trial court as the finder of fact if there is sufficient evidence in the record to support its findings. Here, the trial court provides citation to ample evidence from the certified record to support its verdict and damage award in favor of the Bergs.

Because it is not this Court's role to usurp the fact-finding power of the trial court by its own interpretation of the factual and testimonial evidence, I respectfully dissent from the Majority's decision to remand this matter for judgment notwithstanding the verdict.[1]

_____

[1] The trial judge's reasoning applied to the issues Appellant properly has raised on appeal is sound. However, it is noted with displeasure his tangential

_____

\*   Former Justice specially assigned to the Superior Court.

The Pennsylvania Supreme Court recently adopted the two-part test articulated by this Court in ***Terletsky v. Prudential Property & Cas. Ins. Co.***, 649 A.2d 680 (Pa.Super. 1994), which provides that to succeed on a bad faith claim, a plaintiff must present clear and convincing evidence that the insurer lacked a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of a reasonable basis. The Supreme Court also held self-interest or ill will "is not a prerequisite to prevailing in a bad faith claim under Section 8371." ***Rancosky v. Washington Nat'l Ins. Co.***, ___ Pa. ____, 170 A.3d 364, 365 (2017).

The trial court herein found that on September 10, 1996, Joffred[2] initially opined the Bergs' vehicle was a total loss, and there is ample evidence in the record to support this finding. Such evidence includes, as the Majority acknowledges, an entry in the claims log dated September 10, 1996, despite Witmer's[3] testimony that there was a suggestion that "maybe" the car was not a total loss and his understanding that Joffred believed the Jeep could be a total loss. ***See*** Trial Court Opinion and Verdict, 6/21/14, at 3, 5, 10-11, 13-14; ***See Berg v. Nationwide Mut.Ins.Co., Inc.***, 713 MDA 2015 at *14-15.

---

discourse concerning insurance companies, most concentrated on pages twenty-one through thirty–three of his July 23, 2015, Opinion, as well as peppered throughout his June 23, 2014, and July 23, 2015, Opinions, is irrelevant, unnecessary to the disposition of the issues, and should have been excluded.

[2] Douglass Joffred, Lindgren Chrysler-Plymouth's body shop manager, provided the initial appraisal of the Jeep.

[3] Doug Witmer, a claims adjustor for Nationwide, handled the Bergs' claim.

In fact, Nationwide's Claim Log contains the following, three entries which support the trial court's finding. An entry dated September 10, 1996, at 1:49 p.m. states: "LOSS assigned to COLL on Daniel G. & Sharon E <Berg from 58HARRBR26LIND-TOTAL LOSS. . . CAR IS AT LINDGREN. . . . THEY HAVE ESTIMATE." One minute later, another entry indicates: SHOP ASKED FOR TEAR DOWN TIME TALKED TO RON GAVE OKAY IF TOTAL. . . . SHOP WILL FORWARD ESTIMATE AND PHOTOS." A claims log entry dated the following day, September 11, 1996, at 3:46 p.m., provides: "0140 EVALUATION OF DAMAGES: VEHICLE DAMAGE- Berg, Daniel G & Sharon E called b/s they have est of 12k but feel veh should be a total loss since unibody is twisted told will insp-called ph at home told of assignment."

In addition, on direct examination, Joffred testified as follows:

Q. Was it your opinion at least when I took your deposition that this was a structural total loss?
A. At the appearance of it, yes.
Q. And that was –you had already gotten into it at that point, right, you had torn it apart? I'm referring to Line 2.
A. Yes.
Q. You said structural total loss and you said the whole body is twisted, right?
A. Correct.
Q. And do you agree with that today, or do you disagree with that today?
A. I agree.
Q. And you told that to Nationwide, correct?
A. I told Nationwide what?
Q. What we just talked about
THE COURT: No. Now come on now.
BY (Berg's counsel):
Q. Did you tell Nationwide that you thought it was a structural total loss because the frame was twisted?
A. Yes.

Q.    Could you explain to the jury what a structural total loss is?
A.    It would be a vehicle that was damaged to the point that no matter what it took to fix it shouldn't have been fixed.

\*\*\*

Q.    Sir, isn't it true that you changed your appraisal decision only after meeting with Nationwide?
      (Counsel for Nationwide) Objection.
      The Court:  Overruled.
A.    That I changed my opinion?
Q.    Yes?
A.    Yes.

N.T. Trial, 12/15/04, at 627-29.

The fact that the car was transferred to K.C. Auto Body for service further creates a reasonable inference that Witmer vetoed Joffred's initial assessment of the extent of the damage to the car.  Indeed, in our 2012 Opinion, this Court stated: "[t]he Nationwide claims log suggests that this move was ordered because 'Nationwide will never recover the difference in salvage value.' Bergs' Amended Trial Brief at 3; N.T., 12/13-17/04, at Exhibit 8 p. 65." **Berg v. Nationwide Mut.Ins.Co., Inc.**, 44 A.3d 1164, 1176 (Pa.Super. 2012) (**Berg II**).  Moreover, although the Majority characterizes his testimony on the matter as "somewhat contradictory," Mr. Berg twice testified that Joffred had informed him his vehicle was a total loss.[4]  **See Berg v. Nationwide Mut. Ins. Co., Inc.**, 713 MDA 2015 at \*18-20.

_____

[4] Daniel Berg's wife Sheryl Berg had been involved in the accident on September 4, 1996.  Mr. Berg seeks relief herein individually and as the executor of the estate of Sheryl Berg a/k/a/ Sharon Berg.

- 4 -

The aforementioned evidence when viewed in a light most favorable to the Bergs indicates Joffred's initial appraisal was that the car was a total loss. The finder of fact, not this Court, is the proper arbiter of truth in this regard and is free to make credibility determinations. Thus, I cannot agree with the Majority's determination that there was "no support" in the record for a finding that Witmer, on behalf of Nationwide, in fact, vetoed Joffred's total loss appraisal, which is belied by the Majority's own citation to Witmer's claim log entry of September 24, 1996, and admission that "the record supports a finding that Appellant [Nationwide] deemed repairs more cost effective than a total loss." *Id.* at *22-24.

Similarly, I respectfully disagree with the Majority's statement that the record contains "no evidence" to support a finding that the Bergs' vehicle was irreparable. *Id.* at *28-29. At the same time that it concludes "the record does not support a finding that the Jeep was beyond repair[,]" the Majority concedes "the record confirms only that Lindgren and/or K.C. Auto Body failed to repair the Jeep properly." *Id*. Certainly, evidence that two auto repair shops were unable to repair the vehicle satisfactorily supports the finding by the trial court the Jeep was "beyond repair" and shows bad faith on the part of Nationwide.

In the same regard, the Majority concludes that the extent of the faulty repairs would not have been evident during a visual inspection of the vehicle when the repairs were nearly complete. Yet such conclusion falls short when

determining whether Nationwide knew or acted with reckless disregard in failing to ascertain whether the vehicle was crashworthy. *Id*. at *29-36. Chett[5] testified insurers have an obligation to ensure vehicles are repaired safely and that Nationwide was contractually obligated to pay for repairs to the jeep. *Id*. at *36-37. Although the Majority interprets the evidence to the contrary, the fact that the repair job was to take about twenty-five and one-half days to complete, but instead required four months, further supports the trial court's conclusion that the vehicle was not capable of a safe repair.

Thus, there is sufficient evidence in the record to support the trial court's determination that Nationwide was motivated by monetary gain not to declare the Jeep a total loss, and, therefore, acted with reckless disregard in not thoroughly inspecting the ongoing repairs.

The Majority further concludes the record does not support a finding that Nationwide refused to have the jeep "repaired or purchased," despite its earlier statement Nationwide should have been aware of an "exceptionally poor repair job." *Id*. at *42. The Majority characterizes Nationwide's purchase of the Jeep as preventing an "unsuspecting third party from purchasing and driving the Jeep," as an "act of prudence rather than of bad faith." *Id*. at *47. There would be no need to "act prudently" if Nationwide believed the Jeep to be safe.

_____

[5] James Chett testified as an expert in insurance claims handling.

In any event, it is within the province of the factfinder to discern that Nationwide knew there were safety and mobility problems with the Jeep, thus evidencing bad faith.

Similarly, the Majority notes Nationwide inexplicably and repeatedly refused to comply with discovery requests to produce an unredacted claims log; yet, the Majority finds no proof of bad faith in its doing so because "in [its] view" the claims log contradicts the trial court's finding that Nationwide "vetoed" Joffred's total loss appraisal. *Id*. at *50.

Again, respectfully, this Court cannot supplant the trial court's findings which have support in the record with its own interpretation of the evidence.

With regard to the propriety of the trial court's punitive damages award, the Majority concludes the trial court determined its award after considering matters outside the record. *Id*. at *55. As discussed, *supra*, while the trial court's discussion of matters not of record in its Opinions is irrelevant and unnecessary, the record evidence supports the punitive damages award.

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

> The decision of whether to award punitive damages and the amount to be awarded are within the discretion of the fact finder.

The fact finder should be given broad discretion in assessing an amount which will be sufficient to punish the defendant and set an example to deter him and others from this type of conduct.

In reviewing challenges to punitive damage awards, we determine whether the trial court has committed any abuse of discretion or whether after a complete and exhaustive review of the record, the award shocks the court's sense of justice.

*Lomas v. Kravitz*, 130 A.3d 107, 128 (Pa. Super. 2015), *appealed on other grounds*, 2016 WL 4467284 (internal quotations and citation omitted).

In **Berg II**, we stated that "[f]or purposes of the Bergs' section 8371 claim, whether Nationwide ultimately paid the benefits due under the policy is not the relevant inquiry; instead[,] the dispute is whether Nationwide acted in bad faith in its dealings with the Bergs." **Berg II**, 44 A.3d at 1178. We also clarified that our prior decision in **Bonenberger v. Nationwide Mut. Ins. Co.**, 791 A.2d 378 (Pa.Super. 2002) governed the issue of whether evidence would be properly admissible on retrial to establish Nationwide's "Best Claims Practices" approach to further establish the Bergs' bad faith conduct under Section 8371. **Id.** at 1176-77. As we stated, "[t]his Court has made clear that in bad faith insurance litigation, the fact finder needs to consider 'all of the evidence available' to determine whether the insurer's conduct was 'objective and intelligent under the circumstances.'" **Id.**, at 1170.

The Bergs presented sufficient evidence to enable the trial court to make the necessary findings of fact to establish bad faith on the part of Nationwide, and the trial court computed a proper award of damages under **Rancosky**. In fact, the court states it based its award on the "outrageous acts that

[Nationwide] practiced on [the Bergs]" and enumerates what it deemed to be ten violations of Nationwide's duty to warn, inform and/or disclose important opinions and facts to the Bergs.

Specifically, the trial court highlights that the Bergs: 1) initially were not provided a copy of the September 10, 1996, total loss evaluation or informed that the vehicle had been considered a total loss because of its twisted frame; 2) were not informed the damage to their vehicle was beyond the repair capabilities of Lindgren; 3) were not consulted concerning Nationwide's decision to send the vehicle to an undisclosed repair facility despite the prior total loss appraisal; 4) received the vehicle without full information pertaining to the efforts put forth to repair it and; 5) were not made aware of the initial appraisal of the vehicle as a total loss until pre-trial depositions were taken.

The trial court further stressed that: 6-7) Bashore[6] admitted at trial the Potosnak Report indicated numerous repair failures; 8) Nationwide attempted to circumvent the discovery rules of civil procedure by asserting an attorney/client privilege; 9) certain evidence remained unaccounted for despite record evidence of its existence and; 10) Nationwide failed to disclose its payment in 2004 of $907,543.00 in legal fees or to report additional legal

---

[6] Bruce Bashore, an employee of Nationwide, testified at trial in 2004 that he was familiar with the vehicle's damage through the report which documented structural repair failures.

fees and expenses from 2004-2013 in its answers to interrogatories. Trial Court Opinion, filed 7/23/15, at 43-46.

Upon consideration of that evidence as presented, the trial court reasonably determined Nationwide pursued a litigation strategy that called for aggressive tactics designed to deter one's filing of small claims had been employed in the instant matter. This is especially so in light of the fact that this matter has been unresolved for nearly twenty-two years and that the Potosnak Report which set forth and warned Nationwide of the numerous problems with the Jeep had not been shared with the Bergs for five years. Indeed, the Majority itself acknowledges that "the prospect of years of litigation cuts both ways." *See Berg v. Nationwide Mut. Ins. Co., Inc.*, 713 MDA 2015 at \*55.

The majority vacates the judgment "because the record does not support **many** of the trial court's critical findings of fact." *Id*. at \*59 (emphasis added). In doing so, however, the Majority tacitly admits that other critical findings of the trial court are supported by clear and convincing evidence.

This Court cannot supplant the trial court's findings with its own. Thus, the trial court did not abuse its discretion, and the award of damages does not shock this Court's sense of justice. Therefore, I respectfully dissent and would affirm the trial court.