J-A28016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JUSTIN GAVASTO AND CHERI GAVASTO, INDIVIDUALLY AND AS HUSBAND AND WIFE | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | |
| | : | No. 1625 WDA 2019 |
| 21ST CENTURY INDEMNITY INSURANCE COMPANY | : : : | |

Appeal from the Judgment Entered November 21, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 15-013100

| | | |
|---|---|---|
| JUSTIN GAVASTO AND CHERI GAVASTO, INDIVIDUALLY AND AS HUSBAND AND WIFE | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| 21ST CENTURY INDEMNITY INSURANCE COMPANY | : : : | No. 1695 WDA 2019 |
| Appellant | : | |

Appeal from the Judgment Entered November 21, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-15-013100

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 26, 2021**

Justin and Cheri Gavasto, husband and wife (the Gavastos) appeal, and

21st Century Indemnity Insurance Company (21st Century) cross-appeals,

J-A28016-20

from the judgment[1] entered against the Gavastos and in favor of 21st Century in this bad faith action. After thorough review, we affirm the judgment, quash the cross-appeal, and deny 21st Century's motion to quash.

Facts and Procedural History

The trial court recounted the factual and procedural background as follows:

> On September 9, 2013, [Appellant], Justin Gavasto, was a passenger in a Port Authority bus when another driver collided with it causing [him] to bump his head, as he was bending over to tie a shoelace. Symptoms related to the collision were resolved by March 14, 2014, and all treatment related thereto ended by March 19, 2014.[2]

---

[1] The Gavastos purport to appeal from the non-jury verdict entered on October 3, 2019 and docketed on October 10, 2019; however, an appeal lies from the entry of judgment, not the entry of a non-jury verdict. ***See Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (stating entry of judgment is prerequisite to exercise of this Court's jurisdiction). On November 15, 2019, we directed the Gavastos to praecipe to enter judgment to avoid quashal. The Gavastos complied, and judgment was entered on November 21, 2019. ***See*** Pa.R.A.P. 905(a) (appeal treated as filed after entry of judgment); ***see also*** Pa.R.A.P. 903(a) ("notice of appeal . . . shall be filed within 30 days after entry of the order from which the appeal is taken."). We have amended the caption accordingly. Moreover, because this resolves the issue raised by 21st Century in their motion to quash, we deny that motion.

[2] The Gavastos take issue with several of the factual findings, most importantly, the resolution of Justin Gavasto's symptoms and treatment. However, the facts, including that all necessary treatment ended in March 2014, were determined by the arbitrator in this case. The arbitration was common law arbitration, and the award is binding. ***Snyder v. Cross***, 791 A.2d 1198, 1201 (Pa. Super. 2002). Arbitration proceedings and their findings are deemed final for the purposes of collateral estoppel. ***Dyer v. Travelers***, 572 A.2d 762, 764 (Pa. Super. 1990). "It bars relitigation of issues raised, as well as issues that could have been but were not raised." ***Id.*** Thus, the

- 2 -

[Justin Gavasto] did collect the driver's Geico insurance limits of $15,000.00, and did not make his underinsurance claim until April 9, 2015, when, through counsel, he notified [21st Century] by phone. [Justin Gavasto] was making his claim under a 21st Century policy issued to his brother Phil Gavasto as named insured. 21st Century informed [Phil Gavasto] of the underinsured claim and was advised that [Justin Gavasto] was not a resident relative entitled to coverage under the policy.[3] During the month of April, an investigation was conducted and [21st Century] sent out a Reservation of Rights Letter informing [Justin Gavasto's] attorney of same. The brothers Gavasto were both interviewed and provided evidence in support of denying [Justin Gavasto's] claim and evidence from [Justin Gavasto] in support of coverage.

By June 25, 2015, the coverage investigation concluded with 21st Century's determination that [Justin Gavasto's] claim would be covered under his brother's policy. By July 8, 2015, 21st Century received a packet of documents from [Justin Gavasto's] counsel. [21st Century] evaluated the claim based upon the information obtained from [Justin Gavasto's] attorney and on July 14, 2015, made an offer to [him] of $5,000.00. However, [counsel] was also advised that [21st Century] needed proof that the claimed lost work was in fact due to the injury and not due to other causes. Rather than reply to [21st Century's request for] materials, [the Gavastos] filed this Insurance Bad Faith Claim on July 31, 2015.

The Complaint was never amended. It cited only low ball offers and the investigation as being excessively long to support the Bad

_____

Gavastos may not relitigate the issue of when necessary treatment ended, and the arbitrator's finding that Justin Gavasto's symptoms resolved by March 2014, and the treatment he undertook several years later was not related to the 2013 accident, was binding on the trial court.

[3] At approximately the same time the Gavastos were claiming they resided in Phil Gavasto's home for purposes of obtaining underinsured motorist benefits, they asserted to the Pennsylvania Department of Welfare that they were tenants, not residents, in Phil Gavasto's home, in order to receive public assistance. N.T., 9/19/19, at 141 (referencing Defense Exhibits K and L).

Faith Claim.[4]  At that point, counsel entered appearances for [21st Century] and pleadings and discovery was conducted.  In the summer of 2016, one correspondence from [the Gavastos'] counsel mentioned for the first time a claim [for] loss of consortium by [Cheri Gavasto].  However, the claim was never included in the Bad Faith complaint.

While this claim was in litigation, the underlying claim was agreed to be decided by Arbitration binding before Harry Paras on March 31, 2018.  Prior to the hearing, [21st Century] made additional offers of $12,500.00 and $30,000.00, to which [the Gavastos] did not respond.  [The Gavastos] remained at their demand of the policy limits of $100,000.00 until the time of the hearing.

The claim ended in an award in their favor, but it was not far above the final offer of $30,000.00.

Trial Court Opinion, 1/17/20, at 1-2 (record citations omitted).

The arbitration took place on March 1, 2018.  While it ended with an award in favor of the Gavastos, the arbitrator expressed doubts about the validity of their claim.  Arbitrator's Decision and Award, 3/01/18, at 1-8. Specifically, the arbitrator noted the contradiction between Justin Gavasto's contemporaneous statements to medical personnel that his symptoms had resolved by October 4, 2013, and his later claims that the symptoms never resolved and got worse, causing him to seek additional medical treatment in

_____

4 While the complaint names both Gavastos as plaintiffs, except to note that the two are married, none of the factual allegations mention Cheri Gavasto. Complaint, 7/31/15, at unnumbered pages 1-3.  There are two counts, breach of contract and bad faith.  *Id.* at unnumbered pages 3-5.  The breach of contract claim only references Justin Gavasto.  *Id.* at unnumbered pages 3-4.  The bad faith claim only mentions the failure to fairly investigate and the low settlement offer.  *Id.* at 4-5.  The complaint contains no separate cause of action for loss of consortium, and the phrase "loss of consortium" is never mentioned.  *Id.* at 1-5.

2016.  *Id.* at 2-3.  The arbitrator also pointed out Justin Gavasto's claim that he was unable to work was at odds with his employment history during the same period.  *Id.* at 3.

The arbitrator further addressed difficulties with the Gavastos' loss of consortium claim, stating that the complaint "did not specifically mention consortium" and it "should have been set forth in more specific detail in the [c]omplaint."  *Id.* at 5.  Nonetheless, the arbitrator awarded damages for loss of consortium because the caption of the complaint listed both Gavastos and the policy provided for such claim.  The record does not indicate how the arbitrator arrived at the $15,000 figure.

The arbitrator continued to convey misgivings, stating:

> the evidence presented raises credibility concerns.  How did Mr. and Mrs. Gavasto live with no income and then later upon only Cheri Gavasto's Disability benefit of $700.00 per month? Their monthly rent itself was $650.00.  Although [the Gavastos] testified to borrowing $10,000.00 from Cheri's parents, this income would hardly be sufficient to cover living expenses for several years' time.  Neither Mr. nor Mrs. Gavasto ever provided an explanation as to how they managed to live with little to no income and then only upon Mrs. Gavasto's Social Security Disability benefit for all of this time.

*Id.* at 6.  The arbitrator also raised questions about Justin Gavasto's employability, noting he worked for a time for a temporary agency which could have placed him in jobs which were not impacted by his alleged symptoms.  *Id.*  The arbitrator pointed out that none of Justin Gavasto's treating physicians ever found him to be disabled or partially disabled, and they based

their reports regarding his inability to work on his self-reported symptoms rather than objective medical evidence. *Id.*

The arbitrator described Justin Gavasto's work history prior to the accident as "spotty." *Id.* at 7. He acknowledged Mr. Gavasto's history of working "under the table," and concluded that "his submitted 'proof of income' for years 2015, 2016, 2017, and 2018 is not real proof of income at all." *Id.* The arbitrator questioned the reliability of the wage loss summary submitted by Justin Gavasto, reiterating, "[g]iven that it would be difficult to live on $700.00 per month, a question arises as to whether Mr. Gavasto was earning more than the amounts set forth as 'cash work' on the wage loss summary." *Id.* He noted that Mr. Gavasto chose not to have his cash employer testify or provide any affidavit from his employer[s] as to his wages. He stated, "[t]he phrase 'working under the table' implies that one is not fully accounting for income to the IRS. The Claimant's flippant use of that term during the hearing casts him in an unfavorable light." *Id.*

Ultimately, the arbitrator concluded the evidence demonstrated that Justin Gavasto was injured in an accident, needed post-accident medical treatment, and could not work for a short period of time afterward. *Id.* at 4, 8. While the arbitrator awarded Justin Gavasto $21,905.00 for lost wages and $35,000 for pain and suffering, this Court is again unable to determine the bases for these figures. *Id.* at 8.

The trial court summarized the post-arbitration proceedings as follows:

On the day of the trial [in the instant matter, September 19, 2019], th[e trial c]ourt learned that [the Gavastos'] counsel claimed damages in the Bad Faith claim for failure to consider a loss of consortium claim by Cheri Gavasto, in addition to the pleaded claims of delay in the coverage investigation and low ball offers.

Because loss of consortium was never pled as a basis of [21st Century's] alleged Bad Faith in processing the underinsurance claim, it was not considered during trial. Further, neither [Gavasto] appeared at the trial to support any of the claims. [The Gavastos'] counsel selected witnesses associated with [21st Century] in an attempt to prove [it] improperly handled the claim in such a way that it violated Pennsylvania's Insurance Bad Faith Statute. Th[e trial c]ourt found that the evidence provided at trial did not meet [the Gavastos'] burden of proof by clear and convincing evidence.

Trial Ct. Op. at 2-3.

On October 3, 2019, the trial court entered a verdict in favor of 21st Century. Both parties filed post-trial motions, which the trial court denied.

This timely appeal and cross-appeal followed.[5]

Issues

On appeal, the Gavastos raise five issues[6]:

1. Did this Honorable Court [*sic*] err in finding in favor of [21st Century] when there was not competent evidence presented at trial to support the Court's determination that [21st Century's] conduct in making low ball offers of settlement of the UIM claim and forcing [the Gavastos] to litigate to receive the benefits due

_____

[5] All parties have complied with Pennsylvania Rule of Appellate Procedure 1925.

[6] The wording of these issues is confusing, and the Gavastos appear to be attempting to shift the burden of proof to 21st Century. As the plaintiffs, it was their burden to provide "competent evidence" that 21st Century acted in bad faith.

under the insurance policy was not clear and convincing evidence of Bad Faith?

2.      Did this Honorable Court [*sic*] err in finding in favor of 21st Century when there was not competent evidence presented at trial that resulted to support the Court's determination that [21st Century's] conduct in failing to evaluate information provided by [the Gavastos] regarding the nature and extent of injury as well as wage loss for a period of over two (2) years was not clear and convincing evidence of Bad Faith?

3.      Did this Honorable Court [*sic*] err in finding in favor of [21st Century] when there was not competent evidence presented at trial that resulted to support the Court's determination that [21st Century's] conduct in the handling of the loss of consortium claim was not clear and convincing evidence of Bad Faith?

4.      Did this Honorable Court [*sic*] err in finding in favor [21st Century] when there was not competent evidence presented at trial that resulted to support the Court's determination [21st Century's] conduct in their failure to comply with Pennsylvania's Consumer Protection and Insurance Laws was not clear and convincing evidence of Bad Faith?

5.      Did this Honorable Court [*sic*] err in finding in favor of [21st Century] when there was not competent evidence presented at trial that resulted to support the Court's determination that the uncontroverted testimony and expert report presented at trial by [the Gavastos'] expert, Gary Vanasdale, was credible and convincing evidence as to determine that the conduct of [21st Century] in handling [the Gavastos'] UIM claims was not clear and convincing evidence of Bad Faith?

The Gavastos' Brief at 4-5.

On cross-appeal, 21st Century also raises five issues:

1.      Did the trial court commit an error of law in qualifying the Gavastos' bad faith expert, Gary Vanasdale, to testify as an expert on 21st Century's claims handling practices, where Mr. Vanasdale admitted in *voir dire* that he was unfamiliar with 21st Century's claims handling practices in automobile insurance claims?

2. Did the trial court commit an error of law in denying 21st Century's Motion to Strike the testimony of the Gavastos' bad faith expert, Gary Vanasdale, and in admitting into evidence his expert report, where his testimony and report were premised on facts not in evidence and on inadmissible hearsay evidence, particularly since no showing was made that this hearsay was of a type that an expert on insurance claims handling practices would reasonably rely upon?

3. Did the trial court commit an error of law in admitting into evidence the Gavastos' Trial Exhibits 22 and 23 without authentication and without redaction of inadmissible hearsay?

4. Did the trial court abuse its discretion in denying 21st Century's Motion for Compulsory Nonsuit, where the Plaintiffs, Justin Gavasto and Cheri Gavasto, did not appear for trial and no satisfactory excuse was offered for their failure to testify live or by deposition?

5. Did the trial court commit an error of law in granting the Gavastos' Motion *in Limine* to Preclude 21st Century from offering testimony, evidence, or references as to statements made by the Gavastos regarding the bases/grounds of their bad faith claim against 21st Century, including the Gavastos' contentions as to how 21st Century acted in bad faith?

21st Century's Brief at 7-8.

Discussion

At the outset, we recognize:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

*Metro Real Estate Investment, LLC v. Bembry*, 207 A.3d 336, 339 (Pa. Super. 2019) (citations omitted).  Further, the "credibility of witnesses is an issue to be determined by the trier of fact.  On appeal, this Court will not revisit the trial court's determinations regarding the credibility of the parties." *Garwood v. Ameriprise Financial, Inc.*, 240 A.3d 945, 948 (Pa. Super. 2020) (citations omitted).

"Bad faith" has been defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994).  The Pennsylvania legislature created a statutory remedy for an insurer's bad faith in acting upon an insured's claim.  *See* 42 Pa.C.S.A. § 8371.3.  In *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364 (Pa. 2017), the Pennsylvania Supreme Court held:

> [T]o prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.  We further hold that proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim.  Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong.

*Rancosky*, *supra* at 377.  An insurer may also be found liable for bad faith conduct if the insurer has violated the Unfair Insurance Practices Act by failing to properly investigate the claim or not negotiating in good faith.  *See*

*O'Donnell ex. rel. Mitro v. Allstate Ins. Co*., 734 A.2d 901, 906 (Pa. Super. 1999).

Gavastos' Appeal and Issues

In their first issue, the Gavastos argue, "making low ball offers of settlement is bad faith." The Gavastos' Brief at 14 (unnecessary capitalization omitted). The Gavastos rely on this Court's decision in *Bonenberger v. Nationwide Mutual Insurance Company*, 791 A.2d 378, 379 (Pa. Super. 2002); however, *Bonenberger* is inapposite.

In *Bonenberger*, the **insurance company appealed** from the trial court's finding that it acted in bad faith. *Bonenberger*, *supra* at 379. While this Court affirmed, we did so based upon our narrow standard of review, finding that we had no basis to overturn the trial court's finding that the insurance company representatives were not credible. *Id.* at 380-81. Moreover, we highlighted the trial court's finding that, despite questioning the validity of the insured's medical records, the insurance company failed to conduct an independent medical examination — which is not the case in the Gavastos' action — and found that the insurance company's overall philosophy "encourag[ed] unethical and unprofessional practices." *Id.* at 380; *see id.* at 380-81. Unlike the Gavastos' case, the insureds in *Bonenberger* waited until prolonged negotiations failed, and after the arbitrator's award, before filing a bad faith claim. *Id.* The Gavastos' reliance on *Bonenberger* is misplaced.

As noted by the trial court, the Gavastos filed their bad faith action less than four months after their initial claim, which was also less than two months after the completion of the coverage investigation, and immediately after the insurance company made what was a low, but not final, offer, as 21st Century also requested further documentation in support of Justin Gavasto's claim of lost wages — which the Gavastos never supplied. **See** Trial Ct. Op. at 2, 4.

Further, the Gavastos improperly cast their entire argument in the light most favorable to them, rather than 21st Century as the verdict winner. They ignore their failure to appear, let alone testify at trial. **Id.** at 4. Again, this was not the case in **Bonenburger**.

Lastly, the Gavastos rely on the arbitrator's figures to support their claim of 21st Century's "low ball" offer. As discussed above, the arbitrator explained why he did not find the Gavastos credible, and why he found both their medical and wage evidence unreliable; however, the arbitrator failed to explain his basis for awarding damages, other than there was no dispute that Justin Gavasto suffered a covered injury, was treated for symptoms, and was temporarily unable to work. Arbitrator's Decision and Award at 1-8. The fact that the arbitrator awarded damages which were less than those sought by the Gavastos, but more than what 21st Century offered does not support a finding that 21st Century acted in bad faith.

In sum, the Gavastos have not presented a cogent legal argument, and essentially reargue their case on appeal. With regard to the weight of the evidence,

> our scope of review . . . is very limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 417 (Pa. Super. 2004) (*en banc*).

For the above reasons, the Gavastos' first issue does not merit relief.

In their second issue, the Gavastos inartfully assert 21st Century's "bad faith for failure to evaluate information provided by [them] regarding nature and extent of injury as well as wage loss is bad faith." The Gavastos' Brief at 16 (unnecessary capitalization omitted).

The Gavastos argument is scattershot, unsupported by legal authority and undeveloped. The Gavastos' Brief at 16-19. Again, they project the facts in the light most favorable to themselves, and appear to ask that we reweigh the evidence. We have explained:

> The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that [m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

*Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (citations and quotation marks omitted).

While the Gavastos complain that 21st Century failed to properly evaluate certain medical and wage evidence they provided, they do not specify the evidence, explain its relevance, or state where it is in the record.[7] The Gavastos' Brief at 16-19. The certified record, including transcripts, is nearly 6000 pages. While we have undertaken careful review, it is not our responsibility to comb through the record seeking the factual underpinnings of a claim. *Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this court will not search every page to substantiate a party's incomplete argument"). The Gavastos' second issue is waived.

In their third issue, the Gavastos contend the trial court "failed to look at the Complaint which was filed," and thus erred in concluding the loss of consortium issue was not before it. The Gavastos' Brief at 21.

We turn to whether the Gavastos have preserved this issue for appeal. *See*, *e.g.*, *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (explaining "[t]he fact [a]ppellants filed a timely [court-ordered] Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation.").

_____

[7] Instead, the Gavastos cite the testimony of 21st Century insurance investigator Tina Dean, who does not describe with any particularity the evidence they reference. The Gavastos' Brief at 16-19.

Pa.R.A.P. 1925(b) provides that a judge entering an order giving rise to a notice of appeal "may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal [ ]." Rule 1925 also states that **"[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."** Pa.R.A.P. 1925(b)(4)(vii). In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." **Lord**, 719 A.2d at 309. This Court has held that "[o]ur Supreme Court intended the holding in **Lord** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 2014 PA Super 50, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original).

**U.S. Bank, N.A. v. Hua**, 193 A.3d 994, 996-97 (Pa. Super. 2018) (some citations omitted, emphasis added); **see also Greater Erie Indus. Dev. Corp.**, 88 A.3d at 224 ("it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statements.").

In addition,

Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all.

**Tucker**, 939 A.2d at 346 (citations and quotation marks omitted).

In their Rule 1925(b) statement, the Gavastos phrased this issue as whether the trial court erred, "where the evidence presented at trial should

- 15 -

have resulted in the Court determining that [21st Century's] conduct in the handling of the loss of consortium claim was Bad Faith[.]" Concise Statement of Matters Complained of on Appeal, 12/3/19, at unnumbered page 2. The trial court could not divine from this vague and conclusory sentence that the Gavastos were challenging the finding that they had not properly pled the claim, and thus the court did not address it in his opinion.[8] **See generally**, Trial Ct. Op. at 1-6. Thus, we find waiver of the Gavastos' third issue.[9]

In their fourth issue, the Gavastos assert 21st Century's "bad faith for failure to comply with Pennsylvania's consumer protection laws." The Gavastos' Brief at 22. Once again, we must decide if this issue is before us,

_____

[8] The reason for the trial court to order, and the appellant to file, a Rule 1925(b) statement, is to afford the trial court the opportunity to explain its ruling and correct any error. **See Tucker**, 939 A.2d at 346.

[9] Even if not waived, the claim is meritless. The Pennsylvania Rules of Civil Procedure provide that, "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.Civ.P. 1019(a). Further, "[t]he plaintiff may state in the complaint more than one cause of action cognizable in a civil action against the same defendant. **Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief.**" Pa.R.Civ.P. 1020(a) (emphasis added). As discussed above, the complaint does not contain a cause of action for loss of consortium, and in fact never mentions the phrase. The Gavastos claim 21st Century and the trial court should have intuited from the sentence, "[21st Century] had a duty to timely and fairly investigate the Underinsured Motorist claim submitted by the **Plaintiffs**, yet failed to do so," that they were raising a loss of consortium claim because they used the plural, "plaintiffs." The Gavastos' Brief at 21 (emphasis added). It was the Gavastos' responsibility to specifically assert a loss of consortium claim in their complaint, and they failed to do so.

and reiterate that in their complaint, the Gavastos only raised claims of breach of contract and bad faith; they never alleged any violation Pennsylvania consumer law. *See* Complaint at unnumbered pages 1-5. While it is unclear from their argument, the Gavastos appear to concede the omission, but claim that even if they did not make the claim, there was evidence at trial that 21st Century violated consumer protection laws and the trial court should have considered this as evidence of bad faith. The Gavastos' Brief at 22-25.

Again, the Gavastos disregard the Rules of Appellate Procedure, which provide:

> **Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.

Pa.R.A.P. 2119(e). The Gavastos have not provided such statement. They simply state, verbatim: "In the proposed conclusion of the Court was provided [*sic*] with the law and the evidence that supported a finding that Appellant had in fact violated the act." The Gavastos' Brief at 22. They continue:

> The Opinion is silent as to the facts that were submitted into evidence and also silent as to whether the conduct (evidence) was ever considered. The proposed findings of fact and the report and testimony of Gary Vanasdale set forth valid and convincing evidence that Appellant violated the laws, which provide evidence of bad faith conduct.

*Id.*

- 17 -

The Gavastos' incoherent argument notwithstanding, we have reviewed the voluminous record, and have not found the issue raised with the trial court. For example, the issue is not contained in the Gavastos' post-trial motion. Motion for Post-Trial Relief, 10/17/19, at 1-17. "When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.C.P. 127. A plain reading of Rule 227.1 is clear and unambiguous – in a case of trial without a jury, a party must file post-trial motions after the filing of the decision in the case and any issues not raised in a post-trial motion are waived. Pa.R.C.P. 227.1(b)(2), (c)(2). This interpretation of Rule 227.1 is well-settled. *See, e.g.*, *Chalkey v. Roush*, 805 A.2d 491, 496 (Pa. 2002); *Lane Enterprises, Inc. v. L.B. Foster Co.*, 710 A.2d 54 (Pa. 1998); *Lenhart v. Cigna Companies*, 824 A.2d 1193, 1196 (Pa. Super. 2003). The Gavastos waived their fourth issue.

The Gavastos state in their fifth issue: "Bad faith expert testimony and report provided the Court with evidence of bad faith." The Gavastos' Brief at 26. The Gavastos' do not cite pertinent legal authority, cast the facts in the light most favorable to them, and assail the trial court opinion. *See id.* at 26-27. We have stated:

> When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none. *See* Pa. R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities); *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa.Super.2014) (finding issue waived because the appellant "cited no legal authorities nor developed any meaningful analysis").

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015).

Further, to the extent the Gavastos appear to claim the trial court should have credited their expert's testimony, we repeat:

> The trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

***Davis v. Borough of Montrose***, 194 A.3d 597, 605 (Pa. Super. 2018) (citation omitted). Thus, the Gavastos waived their fifth issue.

21st Century's Cross-Appeal and Issues

21st Century raises five issues on cross-appeal. Pennsylvania Rule of Appellate Procedure 501 states, "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501 (emphasis added). We have held:

> for purposes of Pa.R.A.P. 501[a] party is aggrieved when the party has been adversely affected by the decision from which the appeal is taken. A prevailing party is not aggrieved and therefore, does not have standing to appeal an order that has been entered in his or her favor. Although a prevailing party may disagree with the trial court's legal reasoning or findings of fact, the prevailing party's interest is not adversely affected by the trial court's ultimate order because the prevailing party was meritorious in the proceedings below.

***In re Estate of Pendergrass***, 26 A.3d 1151, 1154 (Pa. Super. 2011) (quotation marks and citations omitted). "When one issue in a case is decided

against a party, but the party prevails on the other issues and wins the case in chief, the party cannot claim to have been aggrieved by the decision; he therefore lacks standing to appeal the single issue decided against him." ***Eck v. Powermatic Houdaille, Div. of Houdaille Industries, Inc.***, 527 A.2d 1012, 1017 (Pa. Super. 1987) (quotation marks and citations omitted).

Here, the trial court ultimately found in 21st Century's favor. Thus, as the prevailing party, 21st Century lacks standing, and we are compelled to quash their cross-appeal. ***See Pendergrass***, ***supra*** at 1154–55; ***Eck***, ***supra*** at 1017.

<u>Conclusion</u>

For the reasons discussed above, we deny 21st Century's motion to quash the Gavastos' appeal; quash 21st Century's cross-appeal; and affirm the judgment entered against the Gavastos and in favor of 21st Century.

Judgment affirmed. Cross-appeal quashed. Motion to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/26/2021</u>